**UNITED STATES of America,
Petitioner,**

v.

**Hon. John M. CASHIN, United States District Judge for the Southern District of New York, Respondent.**

**No. 26306.**

United States Court of Appeals Second Circuit.

Submitted Aug. 1, 1960.

Decided Aug. 18, 1960.

670

S. Hazard Gillespie, Jr., U. S. Atty., Southern Dist. of New York, New York City (Morton S. Robson, Chief Asst. U. S. Atty., and Arnold N. Enker, Asst. U. S. Atty., New York City, on the brief), for petitioner.

Davies, Hardy & Schenck, New York City (John W. Burke and Burton H. Brody, New York City, on the brief), for respondent Maurice Olen.

Margaret Mandeville, Mobile, Ala., respondent pro se.

Tompkins, Lauren & Edelhertz, New York City (Herbert Edelhertz, New York City, and Willis C. Darby, Jr., Mobile, Ala., on the brief), for respondents Lewie F. Childree, Homer Kerlin and Luther E. Clements.

Before LUMBARD, Chief Judge, and CLARK and HINCKS, Circuit Judges.

LUMBARD, Chief Judge.

The United States has filed a petition for a writ of mandamus or prohibition to prevent the transfer of a criminal indictment charging offenses under §§ 17(a) and 24 of the Securities Act, 15 U.S.C.A. §§ 77q(a), 77x, and §§ 14 and 32(a) of the Securities Exchange Act, 15 U.S.C.A. §§ 78n, 78ff(a),[1] from the Southern District of New York to the Southern District of Alabama. Upon the motion of all five defendants requesting the transfer pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, Judge Cashin filed an opinion holding that the

crimes alleged in the indictment were committed in the Southern District of Alabama as well as in New York and that under the continuing offenses venue provision, 18 U.S.C. § 3237(a), trial is proper in Alabama and, further, that it would be "in the interest of justice" if the case were heard there. We think that Judge Cashin's decision was a proper exercise of his power and deny mandamus.

██ The government's petition does not challenge the district judge's determination that the transfer would be in the interest of justice; indeed, as the United States Attorney recognizes, we will not review the propriety of such an exercise of discretion by mandamus, except in "extraordinary" circumstances. Ex parte Fahey, 1947, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; Torres v. Walsh, 2 Cir., 221 F.2d 319, certiorari denied 1955, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 746. The government argues, however, that the crimes set forth in the indictment were committed solely in New York and that the district judge therefore had no power to order a transfer to a district where trial could not lawfully be had. Concededly, if the government is correct in its contention, mandamus would be a proper remedy to redress the erroneous exercise of power by the district court. Foster-Milburn Co. v. Knight, 2 Cir., 1950, 181 F.2d 949; see Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084; United States v. United States District Court, 6 Cir., 1954, 209 F.2d 575.[2]

Count I of the indictment charges a violation of § 17(a) of the Securities Act, which, generally speaking, makes it unlawful "in the sale of any securities" by the use of the mails or other facilities of interstate commerce to employ any scheme to defraud the purchaser of such

---

1. The indictment also alleges violations of the aider and abettor statute, 18 U.S.C. § 2, and the general conspiracy statute, 18 U.S.C. § 371, but these violations are not relevant to the application before us.

2. It is true that all of the cases in which we have heretofore considered issuing a writ of mandamus to redress an erroneous exercise of the district court's power to transfer an action have been civil cases. However, we can see no reason why our power to protect our appellate jurisdiction under the all writs statute, 28 U.S.C. § 1651, in criminal prosecutions should differ from our power to do so in civil cases.

securities.[3] The first paragraph is drawn in the terms of the statute and alleges that all five of the defendants, by means of untrue and misleading statements made in the prospectus and registration statement filed by The Olen Company, Inc., in connection with the sale of an issue of its common stock to the public, defrauded various named purchasers. The following paragraphs go on to detail the means by which the scheme was carried out and the final paragraph of Count I alleges that for the purpose of executing the fraud a letter confirming the purchase of common stock of The Olen Company was mailed from the Southern District of New York to a named purchaser residing in New York.

Counts II through V of the indictment are identical to Count I except that the mailing of a letter of confirmation to a different named purchaser residing in New York is alleged and defendant Margaret Mandeville is not named in these counts.

Count VI of the indictment charges a violation of § 14 of the Securities Exchange Act, which prohibits the solicitation of proxies with respect to any security listed on a national securities exchange by means of a proxy statement which is materially false or misleading.[4] The count describes the respects in which the proxy statements issued by the defendants were false and alleges generally use of the mails and other facilities of commerce.[5]

The government concedes, as it must in the light of its bill of particulars, that the fraudulent scheme alleged in the indictment was formed and in large measure executed in Mobile, Alabama, where The Olen Company has its headquarters and where all of the defendants—a former president and a former bookkeeper of The Olen Company and two partners and an employee of its former accountants—reside. But it contends that since a use of the mails or other facilities of interstate commerce is a prerequisite

3. Section 17(a) provides:
"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
"(1) to employ any device, scheme, or artifice to defraud, or
"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

4. Section 14(a) provides:
"It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary

or appropriate in the public interest or for the protection of investors."
Pursuant to this section the S. E. C. has promulgated Rule 14a–9 of its General Rules under the Securities Exchange Act, 17 C.F.R. § 240.14a–9 (Supp.1960), whose violation is alleged in the indictment:
"No solicitation * * * shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

5. The indictment contains two further counts, VII and VIII. The former of these alleges a violation of the Securities Exchange Act and the latter a violation of the general conspiracy statute, 18 U.S.C. § 371. As to both of these the government concedes that trial may properly be held in the Southern District of Alabama.

to the invocation of the federal statutes, the crimes were not "committed" until the mailings alleged took place and therefore may only be prosecuted at those places where the mailings had their impact, in this case only New York. We think the government's interpretation of the securities laws and the pertinent venue statutes is erroneous and that venue is properly laid in the Southern District of Alabama.

 Rule 21(b) of the Federal Rules of Criminal Procedure provides:

"The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

Under this rule the court is authorized to transfer an action only when the crime charged was "committed" both in the district where the indictment was returned and in the transferee district. United States v. Warring, D.C.D.Md. 1954, 121 F.Supp. 546, affirmed 4 Cir., 222 F.2d 906, certiorari denied, 1955, 350 U.S. 861, 76 S.Ct. 102, 100 L.Ed. 764. In such circumstances venue is proper in both districts, for 18 U.S.C. § 3237(a), paragraph one, provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Section 3237 is applicable to the Securities Act counts of the indictment before us because the Act itself contains no venue provision for criminal cases except § 20(b), 15 U.S.C. A. § 77t(b), by its terms irrelevant to this case and, in any event, only supplementary to the general venue statutes. See United States v. Monjar, D.C.D.Del. 1942, 47 F.Supp. 421, 427–428, affirmed,

3 Cir., 1944, 147 F.2d 916, certiorari denied 1945, 325 U.S. 859, 65 S.Ct. 1191, 1192, 89 L.Ed. 1979.

By ordinary use of the English language the crimes alleged in the indictment were "begun" and "continued" in Alabama, where almost all of the acts performed in furtherance of the scheme took place. See United States v. Gross, 2 Cir., 1960, 276 F.2d 816; United States v. Floyd, 7 Cir., 228 F.2d 913, certiorari denied 1956, 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1466. The indictment charges that the false financial statements were drawn up there, the fraudulent inventory records prepared there, and numerous other steps taken there. Indeed, except for the mailings, no acts in furtherance of the crime are alleged to have taken place in New York. In the absence of exceedingly compelling arguments, we would not be inclined to reach a conclusion contrary to this common sense view of the venue statute—that the crimes alleged in Counts I through V were "committed" in Alabama.

 The fact that there could be no violation of the Securities Act until some use was made of the mails or other facilities of interstate commerce, and that this use was in New York, is scarcely reason to decide that no crime was begun or continued—or even "committed"—elsewhere than in New York. The gist of the crimes charged in the indictment, as in most Securities Act cases, is the fraudulent scheme employed in the sale of securities. See United States v. Robertson, D.C.S.D.N.Y.1959, 181 F.Supp. 158; United States v. Monjar, supra. The purpose of the requirement that there be a use of the mails or other facilities of commerce is solely to create a basis for federal jurisdiction. Creswell-Keith, Inc. v. Willingham, 8 Cir., 1959, 264 F.2d 76; Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875; United States v. Robertson, supra. The use of the mails need not be central to the fraudulent scheme and may be entirely incidental to it. See, e. g., Kopald-Quinn & Co. v. United States, 5 Cir., 101 F.2d 628, certiorari

denied sub nom. Ricebaum v. United States, 1939, 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511. Indeed, in the very case before us the only alleged use of the mails was to confirm purchases already induced by the defendants' deceit. No claim is made that fraudulent matter was mailed or even that the mailings alleged were necessary to the execution of the unlawful scheme. In such circumstances it cannot be said that the only places at which the crimes charged took place were those where the mailed matter had its impact. The crimes were "begun," "continued," and "committed" as well at the place where most of the acts necessary to their execution occurred.

■ The government strenuously urges in support of its position that the present indictment under the Securities Act is analogous to an indictment under the mail fraud statute, 18 U.S.C. § 1341, and that hence we should be guided by the rules of venue applied in such actions. It has long been settled that in prosecutions for mail fraud trial may be had only in the place of mailing, the place of receipt of the mail, and places through which the mailed matter passed. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989.

■■ The analogy is not an apt one because it ignores the fundamental fact that the purpose of the mail fraud statute is to protect against the "use of the United States mails in furtherance of * * * [the] scheme," Holmes v. United States, 8 Cir., 134 F.2d 125, 129, certiorari denied 1943, 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722, while the evil at which the Securities Act is directed is the fraud in the sale of securities. It is entirely reasonable that under each statute trial should be had at the place where the primary evils at which the law is directed occur. Moreover, we cannot ignore the fact that the venue rule for mail fraud cases was developed many decades ago, when more restricted notions of the limits of federal power prevailed than exist today. Were the issue of the appropriate place of trial in such cases to arise de novo in 1960, it is by no means clear that trial would not be permitted at the place where the fraudulent scheme was developed as well as at the places where the mailing has its impact. While there may be no compelling reason to change the already settled doctrine for mail fraud cases, there is surely no reason to now extend the rule to other areas of the law.

■ Nor does the second paragraph of § 3237(a), which makes the venue rule of the mail fraud cases applicable to "any offense involving the use of the mails," prohibit trial in Alabama, as the government argues.[6] An examination of the legislative history of this paragraph, added to § 3237(a) in 1948, shows clearly that it was intended to broaden the venue permissible under the pre-existing law, not to restrict the provision set forth in the preceding paragraph of the section. See H.R. Rep.No. 304, 80th Cong. 1st Sess. (1948); United States v. Johnson, 1944, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. The precatory language of the second paragraph also indicates that it was intended only to create an alternative venue, and not to provide the exclusive venue for cases involving use of the mails.

■ Examination of the criminal venue provisions contained in the other federal securities laws supports the view that Congress intended that Securities Act violations might be prosecuted where

---

6. The whole of § 3237(a) reads as follows:
"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

the illegal scheme was devised. The Securities Exchange Act, the Public Utility Holding Company Act, the Investment Company Act, and the Investment Advisers Act all contain venue provisions stating that criminal proceedings "may be brought in the district where any act or transaction constituting the violation occurred." [7] It is clear that under these provisions venue would be proper in the district where the scheme was hatched, and probably in any district where acts in furtherance of the scheme took place. That the Securities Act contains no comparable venue provision seems more due to oversight or poor draftsmanship than to any conscious intent of the Congress to provide a more restricted venue under that Act. Certainly we can think of no reason why Congress might have wished venue to be more limited under the Securities Act than under the other federal securities laws. It is therefore appropriate that we should interpret the general venue provision, § 3237(a), to apply to Securities Act cases so as to achieve harmony with the specific venue provisions under the other securities laws.

Considerations of policy also support our view that venue is properly laid in Alabama. The Constitution and the Bill of Rights provide that the trial of crimes "shall be held in the State where the said crimes shall have been committed," Article 3, § 2, cl. 3, and before "an impartial jury of the State and district wherein the crime shall have been committed." Sixth Amendment. Recognizing "the unfairness and hardship to which trial in an environment alien to the accused exposes him," and the important policies underlying the venue provisions of the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant. United States v. Johnson, supra, 323 U.S. at

page 275, 65 S.Ct. at page 250. The position taken by the government in this case is squarely contrary to this rule of construction, for it would permit the government to select the place of trial to suit its sole convenience simply by alleging mailings only at places where it wished the trial to be held. On the other hand, an expansive interpretation of the venue provisions of § 3237(a) as applied to Securities Act cases, together with application of the liberal transfer provision of Rule 21(b) of the Federal Rules of Criminal Procedure, permits the selection of the place of trial in each case as justice and convenience dictate.

The specific holding of the Johnson case, that venue in a prosecution under the Federal Denture Act, 18 U.S.C.A. § 1821 was not properly laid in the place where the illegally mailed dentures were received, does not militate against an expansive view of the venue statute before us. The Johnson case was decided prior to the passage of the Federal Rules of Criminal Procedure and before there was any procedure under federal law for the transfer of venue in criminal actions. In order to further the policy of affording defendants a right to a trial at the place of their residence, it was necessary for the Supreme Court to construe the Denture Act to permit trial only at the place of mailing. With the advent of an adequate transfer provision a construction of the venue statute which allows the greatest selection among the possible places of trial is most likely to give maximum recognition to a defendant's interest in a trial at his home base.

Thus far, we have referred only to the venue as to Counts I through V of the indictment. The question of venue under Count VI, the Securities Exchange Act count, may be summarily disposed of. As discussed earlier, the controlling statute as to this count is § 27 of the Securities Exchange Act, which per-

---

7. Securities Exchange Act, § 27, 15 U.S. C.A. § 78aa; Public Utility Holding Company Act, § 25, 15 U.S.C.A. § 79y; Investment Company Act, § 44, 15 U.S. C.A. § 80a–43; Investment Advisers Act,

§ 214, 15 U.S.C.A. § 80b–14. The Trust Indenture Act contains no venue provision of its own. See § 321(a), 15 U.S. C.A. § 77uuu(a).

mits prosecution in any district where "any act or transaction constituting the violation occurred." It is clear from the indictment and bill of particulars that most of the acts in the preparation and circulation of the false proxy statements alleged in this count occurred in Alabama. Hence, trial of that count may be held there.

Petition for mandamus denied.