SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

GULF INTERCONTINENTAL FINANCE CORPORATION, Limited, Harold Gradsky, Leon Herman Gradsky, Saul M. Liberman et al., Defendants.

Civ. No. 63–40.

United States District Court
S. D. Florida.
March 12, 1963.

Edward C. Jaegerman, Trial Counsel, SEC, Washington, D. C., John T. Callahan, Sp. Counsel, SEC, Jule B. Greene, Atty., SEC, Miami, Fla., for plaintiff.

E. David Rosen, Monroe Gelb, E. Coleman Madsen, Miami, Fla., for defendants.

CHOATE, District Judge.

### Statement of Case

Bill of Complaint was filed herein January 25, 1963 by the SEC against the various corporate and individual defendants pursuant to Section 17(a) of the Securities Act of 1933, as amended (15 U.S.C. § 77q(a)), and Section 10(b) of the Securities Exchange Act of 1934, as amended, and Rule 10b–5 promulgated thereunder, (15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b–5).

Plaintiff sought injunction of the alleged violations pursuant to Section 20 (b) of the 1933 Act, as amended (15 U.S.C. § 77t(b)) and Section 21(e) of the 1934 Act, as amended (15 U.S.C. § 78u (e)). Plaintiff also sought appointment of receiver for and accounting from said defendants of funds and assets of the corporate defendants to conserve and recoup for the benefit of investors such assets as were allegedly obtained by the sale of securities in alleged violation of above cited anti-fraud sections of the Securities and the Securities Exchange Acts.

A 10-day temporary restraining order was entered ex parte upon the complaint and sworn affidavit attached thereto. On Jan. 30, 1963, the plaintiff moved for continuation of the restraining order and sought further issuance of a preliminary injunction and appointment of a receiver. This motion was noticed for hearing on Feb. 4, 1963, and plaintiff submitted additional affidavits in support thereof. The Court extended the restraining order and on Feb. 4, 1963, defendants (with the exception of Chester Maier who has not appeared in the cause) filed a Motion to Dismiss for lack of jurisdiction over the subject matter. On Feb. 8, 1963, defendants filed an additional Motion to Dismiss contending that the SEC did not have jurisdiction over the subject matter, and that the allegations of the complaint and affidavits were insufficient in law and fact. The defendants' motions came on to be heard on Feb. 15, 1963, together with plaintiff's Motion for Preliminary Injunction and Appointment of Receiver which had not previously been ruled upon. At the hearing all defendants with the exception of Maier were present by counsel and upon oral argument, the introduction of certain evidence by plaintiff, a stipulation of facts agreed to by defendants, and on the verified motion and affidavits filed herein by plaintiff, the Court entered an order of Preliminary Injunction and appointed a receiver to take charge of the assets of the defendant corporations to prevent the dissipation of said assets and to insure the best interests of their public investors.

Pursuant to Rule 52(a) F.R.Civ.P. the Court makes the following

### FINDINGS AND OPINION

██ Under Rule 12(b) F.R.Civ.P., the complaint must be construed in favor of the plaintiff, and all well-pleaded allegations therein taken as true. See Guessefeldt v. McGrath, 342 U.S. 308, 310, 72

S.Ct. 338, 96 L.Ed. 342 (1952); Atlantic & Gulf Stevedores, Inc. v. Donovan, 274 F.2d 794, 797 (5th Cir. 1960). No supporting memoranda have been filed in connection with the defendants' motions, and their terse nature is such that the Court is not precisely advised of the grounds upon which they stand. However, giving them a broad construction pursuant to Rules 8(b) and 8(f) F.R. Civ.P., it appears that the attack herein is threefold: (1) this court lacks jurisdiction over the subject matter; (2) the SEC lacks standing to prosecute this complaint; (3) the complaint fails to state a cause of action upon which relief may be granted.

Upon oral argument it was apparent that the principal thrust of defendants' contention as relates to all three objections is premised on the lack of any showing by plaintiff that the securities involved were sold within the borders of the United States. It is to this problem which the Court addresses itself. Defendants do not seriously press the objection based on failure to state a cause of action on other grounds, and do not offer any vigorous opposition to the injunction and appointment of receiver beyond the jurisdictional question.

For the purposes of the Court's interlocutory orders thus far entered in this cause upon the summary hearings, and without prejudice to defendants' rights to controvert same in plenary hearings in this cause or in trial of criminal charges now pending against the individual defendants arising out of the same transaction, the Court does hereby adopt the following findings of fact.

*Findings of Fact*

1. The individual defendants Harold Gradsky, Leon Gradsky, Saul M. Liberman and Milton H. Spell are and/or have been inhabitants of the Southern District of Florida. All have transacted business within the District, were duly served with process herein, and through counsel have entered a general appearance.

2. The individual defendant Chester Maier is an inhabitant of the Southern District of Florida; service of process herein was made at his residence within this District; he has not yet answered or entered an appearance herein.

3. The corporate defendants, Auto Factors, Southern Motor Sales, New Car Discount, Kane Leasing and Great Western Land are Florida corporations which transact business and are found within the Southern District of Florida; all were duly served with process herein and through counsel have entered a general appearance herein.

4. The corporate defendant Gulf Intercontinental is a Canadian corporation which transacts business both in Canada and within the Southern District of Florida. It owns all the stock of Auto Factors. Gulf Intercontinental was duly served with process herein and through counsel has entered a general appearance herein.

5. The concept of organization and subsequent operation of Gulf Intercontinental originated within the Southern District of Florida, and was implemented by discussions in the Miami, Florida area and in Montreal, Canada during the period September 1962 to date, variously, between Harold Gradsky, Leon Herman Gradsky, Saul M. Liberman and Milton H. Spell. Such discussions included:

(a) A plan of public offer and sale of securities, namely 8½% and 8% notes of Gulf Intercontinental, in Canada to Canadians by means of an extensive advertising campaign in some 63 of the leading daily newspapers published in principal Canadian cities. During the above period some 450 persons purchased some $800,-000.00 of these securities primarily as a result of this newspaper solicitation. Several of the leading newspapers in Montreal and Toronto, Canada carried the advertisements of Gulf Intercontinental offering its 8½% and 8% securities and a substantial number of copies of these newspapers circulated in the United States and were available for sale and doubtless were sold at newsstands in the

United States, including newsstands within the Southern District of Florida.

(b) The plan included collecting and depositing in a bank or banks in Montreal, Canada the net proceeds of sale of such securities with Saul M. Liberman and Leon H. Gradsky as joint signataries; the transmission of such, net funds by wire and by mail from Montreal, Canada to the Miami, Florida area partially via the personal bank account of Harold Gradsky at the Grace National Bank of New York, New York City, New York, and partially directly to the Miami, Florida bank account of Auto Factors at the Miami National Bank, Miami, Florida; and the further transmittal of funds from Grace National Bank and the Auto Factors Miami account to bank accounts in the Miami, Florida area, within the Southern District of Florida, of Southern Motor Sales, New Car Discount, Kane Leasing and Great Western Land. Some $250,000.00 was transmitted from Canada to Miami via interstate and foreign commerce from Gulf Intercontinental to Auto Factors. An additional $85,000.00 was transmitted from Montreal, Canada to New York, New York and then to the Miami, Florida area from Gulf Intercontinental through Harold Gradsky to Great Western Land and New Car Discount by means of mail, wire and other methods of transportation and communication in interstate and foreign commerce.

6. To effect the purposes of the plan, Harold Gradsky, Leon Gradsky, Saul Liberman and Milton Spell travelled one or more times between Miami, Florida and Montreal and Toronto, Canada.

7. To effect the purposes of the plan, there were long distance telephone conversations between Montreal, Canada and the Miami, Florida area between Harold Gradsky and Saul M. Liberman.

8. To effect the purposes of the plan, there were letters, notes and memoranda transmitted by means of the use of the United States mails between the Miami, Florida area and Montreal, Canada, between Harold Gradsky and Saul M. Liberman.

9. Harold Gradsky received a $10,-000.00 fee for acting as a consultant and advisor and for his guidance in helping to set up Gulf Intercontinental. He was assisted by his brother, Leon Gradsky. Five thousand dollars was also paid to Harold Gradsky for traveling expenses to Florida, New York, Montreal, Toronto and Hamilton, Canada. Five thousand dollars was paid to Saul M. Liberman re: promotional expenses, organizational, traveling, etc. in addition to his salary at the rate of $17,500.00 a year. One thousand five hundred dollars was paid to Milton H. Spell re: traveling from the United States, promotional expenses, organizational, traveling, etc. Milton Spell also issued to himself $4,800.00 in addition to his salary.

10. The plan has been unable to earn the monthly interest requirements on the 8½% and 8% notes. Interest to date has been paid out of principal.

11. There is presently a substantial principal impairment with respect to the outstanding note obligations of Gulf Intercontinental to its 8% and 8½% noteholders.

12. A petition for a receiving order in bankruptcy against Gulf Intercontinental was filed in Montreal, Canada on February 4, 1963 in the Superior Court for the Province of Quebec, District of Montreal. A petition of intervention in the above bankruptcy proceedings against Gulf Intercontinental was filed on February 6, 1963 in the Superior Court for the Province of Quebec, District of Montreal.

13. On December 21, 1962, the Quebec Securities Commission and the Ontario Securities Commission jointly and severally entered orders prohibiting Gulf Intercontinental from any further trading or dealing in securities and in particular from the issuance, offer or sale of any additional 8½% and 8% notes; the Quebec Securities Commission and the Ontario Securities Commission jointly and severally did seize books, records and documents of Gulf Intercontinental and did seize and attach various bank accounts in different banks and in different branches of such banks of Gulf Inter-

continental and said seizure and attachments continues today against the bank accounts, books, records and documents of Gulf Intercontinental in Canada.

14. In addition to the $340,000.00 advanced, as above, by Gulf Intercontinental to Harold Gradsky and the five Florida corporations, the following additional unsecured loans were made by Gulf Intercontinental:

| | |
|---|---|
| Milton Spell | $ 7,900.00 |
| Saul Liberman<br>(as Harry Green) | 6,500.00 |
| Saul Liberman<br>(as Marion Marshal) | 14,000.00 |
| Saul Liberman<br>(as Elian Fournier) | 5,000.00 |

15. Auto Factors, using funds advanced by Gulf Intercontinental and using checks drawn on Auto Factors' bank account at the Miami National Bank within the Southern District of Florida, paid salaries, travel expenses, telephone bills, advertising bills, etc. of its parent, Gulf Intercontinental.

16. Using funds received in interstate commerce from Gulf Intercontinental, Southern Motor Sales, New Car Discount and Kane Leasing purchased new and used cars in the Miami, Florida area within the Southern District of Florida, rented offices and premises, including new and used car lots, engaged salesmen and sales managers and otherwise attempted to conduct and did purport to conduct business within the Southern District of Florida. No license to transact a used car business was ever granted to any of these companies and one such license was refused to Southern Motor Sales.

17. A substantial amount of assets, including substantial bank accounts and a substantial number of new and used cars, are presently within the Southern District of Florida and covered by a restraining order issued by the United States District Court for the Southern District of Florida. These assets were entirely derived from funds transmitted in interstate and foreign commerce, as above, from Montreal, Canada to the Southern District of Florida.

18. Saul M. Liberman is president of Auto Factors and the only authorized signature on its checking account at the Miami National Bank, Miami, Florida. Leon H. Gradsky is president of Southern Motors and the only authorized signature of its bank account at the Miami National Bank. Harold Gradsky is president of New Car Discount, Kane Leasing and Great Western and the only authorized signature on the bank accounts of said companies. New Car Discount and Great Western maintain checking accounts at the Miami National Bank and Kane Leasing maintains a checking account at the County National Bank of North Miami Beach, North Miami Beach, Florida.

19. During the period November 1, 1962 through January 24, 1963, Auto Factors deposited $250,500.00 received from Gulf Intercontinental, of which $250,000.00 was purportedly a loan and $500.00 for Auto Factors' paid-in capital.

20. During the period November 1, 1962 to December 28, 1962, Harold Gradsky deposited to his personal checking account at Grace National Bank of New York $85,000.00 received from Gulf Intercontinental, $75,000.00 of which was purportedly a loan and $10,000.00 a fee for services. The balance in the account at November 1, 1962 was $25.50. No other deposits were made during the period.

21. During the period November 28, 1962 to January 24, 1963, Auto Factors issued checks, purportedly as loans, to New Car Discount, Southern Motors and Kane Leasing for the amounts of $150,000.00, $70,000.00 and $25,000.00 (totaling $245,000.00), respectively.

22. Of the funds aggregating $350,584.10, checks were issued for a total amount of $245,839.24, leaving a balance of $1.88, $2,821.25, $4,023.42, $57,376.28, $40,312.02 and $209.51 in the checking accounts of Auto Factors, Southern Motors, New Car Discount, Kane Leasing, Great Western and Harold Gradsky's personal checking account at Grace National Bank of New York, respectively.

23. Of the disbursements totaling $245,837.24, Harold Gradsky received

$82,240.66 from checks issued to his order totaling $54,540.39, from checks issued for Harold Gradsky's personal expenses totaling $7,150.99, from checks issued to or for Harold Gradsky's wife, Bertha, totaling $14,825.00, from a check issued for salary in the net amount of $2,409.38 and from checks issued purportedly for the purchase of automobiles from Harold Gradsky's wife, Bertha, and Harold Gradsky's sister, Pauline Ablon, totaling $3,314.90, on which checks Harold Gradsky is shown as the last endorsement; Leon H. Gradsky received $14,028.11 from checks issued to his order totaling $10,286.95 and from checks issued for Leon H. Gradsky's personal expenses, totaling $3,741.16; checks were issued purportedly for purchases totaling $132,112.42; for operating expenses totaling $6,284.07; on behalf of Gulf Intercontinental totaling $7,016.98; for telephone and electric deposits totaling $485.00; for furniture totaling $670.00; and a $3,000.00 check was issued, cashed and the proceeds wired by Miami National Bank to Security Exchange Bank at Palm Beach for the account or use of Floridana Enterprises, which never had an account at the Security Exchange Bank.

24. During the period November 13, 1962 to January 24, 1963, the bank accounts of Great Western, Kane Leasing and New Car Discount show no deposits resulting from operating income. The bank account of Southern Motors shows a $7,300.00 sale to New Car Discount and unidentified deposits of $6,616.90; the bank account of Auto Factors shows no operating income and only deposits totaling $1,140.70 from unidentified sources.

25. Because of the withdrawal of funds by the Gradsky brothers, as above, there is a material working capital impairment for the defendant Florida corporations. Disregarding inter-corporate transactions there is no realized net income or any earnings available to meet the interest requirements on funds advanced by Gulf Intercontinental.

26. A substantial portion of the assets of the defendant corporations, derived from payments of noteholders, has been dissipated to pay salaries and living, legal, travel and other expenses of the defendants Harold Gradsky, Leon Herman Gradsky, Saul M. Liberman and Milton H. Spell.

27. New and used cars purchased with funds of the public investors are deteriorating in open storage on lots rented by the defendants Leon and Harold Gradsky.

28. Monies invested by noteholders have been paid to noteholders as purported interest payments, without disclosure to noteholders of the actual source of such payments.

29. There is no present management of competence or integrity or with business or financial ability available to conduct the business and affairs of the defendant corporations. Thep resent Gradsky-Maier-Spell-Liberman management cannot be entrusted to wind up the affairs of the defendant corporations in the best interests of the noteholders of the defendant Gulf Intercontinental Finance Corporation, Limited.

30. A receiver appointed by this Court is necessary to protect the interests of public investors.

*Conclusions of Law*

The gravamen of the complaint is fraud and use of *any* means of interstate facilities or the mails to accomplish it either directly or *indirectly* in the sale of securities.[1] Fraud under the legislation in question is given a broad, remedial definition and is not limited to the common law elements of deceit.[2] The facts set forth above lead inescapably to the conclusion that the defendants, and

1. See, e. g., Hooper v. Mountain States Securities Corp., 282 F.2d 195, 204 (5th Cir. 1960) (§ 10(b) and Rule 10b–5) or United States v. Cashin, 281 F.2d 669, 673 (5th Cir. 1960) (§ 17(a)).

2. Hooper v. Mountain States Securities Corp., 282 F.2d 195, 301 (5th Cir. 1960).

each of them, are engaged and are about to engage in acts and practices which constitute and will constitute violations of Section 17(a) of the Securities Act of 1933[3] and Section 10(b) of the Securities Exchange Act of 1934[4] together with Rule 10b–5[5] promulgated thereunder.

No opposition has been raised by the defendants to the assertion by plaintiff that the 8½% and 8% notes of the defendant Gulf Intercontinental Finance Corp. are securities.[6]

Jurisdiction over the defendants in this action is invoked pursuant to Section 22(a) of the Securities Act of 1933[7] and Section 27 of the Securities Exchange Act of 1934.[8] All defendants before this court are within the provisions of these sections and no question of jurisdiction or venue exists on this record where all defendants are found and have been personally served within the district.

However, the question of jurisdiction over the subject matter raised by defendants is grounded on the contention that the offer for sale of securities, the actual sales themselves, and the corporate existence of the offering corporation were all limited to the territorial limits of Canada, and that the Congress did not contemplate or authorize the prosecution of an action such as this under the acts in question.[9]

The court agrees that if the transaction alleged in the complaint and affidavits, together with stipulations, could be fragmented, and the Canadian portion of these acts could be isolated from the entirety, there might be merit in defendants' assertion. However, on the basis of the facts found above, it must be concluded that the scheme to defraud, if it existed, operated and was executed in the United States and within the Southern District of Florida, as well as in Canada.

 The defendants do not contest the fact that a substantial number of copies of the Canadian newspapers were circulated within the United States, and the offer (contained therein by advertisement of Gulf Intercontinental) was extended to all parties who might be interested. The court takes judicial notice of the fact that south Florida is favored by large numbers of vacationing Canadians yearly and particularly during the winter season. The court further takes judicial notice of the fact that the various Canadian newspapers are offered on the news stands of Miami, Florida as they are in other major cities of the United States. There is no doubt that the American public has been exposed to the offer contained in such newspapers and that such exposure extended to most centers of population of the United States including cities in the Southern District of Florida.[10] The court also takes judicial notice of the fact that the Canadian securities market is one favored by a substantial number of American investors. It is sufficient for subject matter jurisdiction under the Acts that such offers be made within the United States

3. 15 U.S.C. § 77q(a).

4. 15 U.S.C. § 78j(b).

5. 17 C.F.R. 240.10b–5.

6. In fact there could be none since Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), as amended, defines security, inter alia, as "any note" or "evidence of indebtedness."

7. 15 U.S.C. § 77v(a).

8. 15 U.S.C. § 78aa.

9. The only case cited to the court by defendants in oral argument which might be applicable is Kook v. Crang, 182 F. Supp. 388 (S.D.N.Y.1960), a case arising under Section 7(c) of the Securities Exchange Act of 1934 (15 U.S.C. § 78g (c)) and clearly distinguishable from the case at bar. In fact dictum in Kook found at page 391, of 182 F.Supp. would support the conclusion reached in the instant case.

10. 15 U.S.C. § 77b(7). The definition of interstate commerce therein (as trade or commerce in securities) includes "between any foreign country and any State * * *." See, c. f., Kukatush Mining Corp. v. S. E. C., 114 U.S.App.D.C. 27, 309 F.2d 647, 650 (1962) stating, "The stock of a foreign corporation * * * can be sold in another jurisdiction only on the terms prescribed by that jurisdiction" See also, I Loss, Securities Regulation at 363 (1961).

without a showing that such offers were accepted by actual sale,[11] or that the alleged misrepresentations were in fact successful in inducing the sale of such securities by reliance thereon.[12]

Likewise, the defendants do not contest the fact that various interstate facilities were used by the various defendants in the course of the activities described in the complaint. The gist of the complaint taken in its entirety is one of conspiracy to defraud by a plan which operated through the creation of five Florida corporations and one Canadian corporation all under the control of the individual defendants herein. The scheme charged by the plaintiff was all part of a whole.[13] The Canadian sales could not have been brought about without the representations to the investors of the underlying securities in the Florida corporations, nor could the monies received from such sales be siphoned off into the hands of the individual conspirators without the individual or corporate activity taking place within this district.

Looking through the transparent fabric of this promotional scheme, it becomes obvious that the true issuers [14] of the notes of the Canadian company were the Florida defendants both individual and corporate since the purpose of the Canadian company was to purchase the notes of the Gradskys and their control corporations in exchange for the monies which the Canadian corporation received from the public. Gulf Intercontinental was nothing more than a conduit for the securities caused to be issued by the Florida defendants.

 The Acts clearly apply to the offer of foreign securities within the United States.[15] On the basis of the foregoing, the Court is not reaching a novel decision in so far as it holds that there has been a prima facie showing of violations of the Acts in question sufficient to support the complaint and the interlocutory remedy sought.

██ Although the court has been directed to no cases on point and believes that there are none, it would also appear salutary to indicate that even though there had been no showing of offers of such securities within the United States, there is nothing within the Acts in question which would appear to limit the protection offered by Section 17(a) and Section 10(b) and Rule 10b–5 to residents of the United States. It would appear that where the scheme is one which necessarily must be accomplished in part by use of the mails or interstate facilities within the limits of our federal jurisdiction that even though the offer were made entirely outside the nation that the remedial protection of these sections may be invoked. Whether the corpus delicti of Section 17(a) and Section 10(b) and Rule 10b–5 is use of the mails or facilities of interstate commerce or whether it is fraud, it is obvious that the use of interstate facilities either directly or indirectly is the jurisdictional base of a complaint or prosecution under these sections.[16] The courts of this nation have consistently repeated that the acts shall

---

11. 68 Stat. 686 (1954) added the words "offer or" before the word "sale", in Section 17(a). See I Loss, Securities Regulation at 512.

12. See N. Sims Organ & Co., Inc. v. S. E. C., 293 F.2d (2d Cir. 1961) at 80, note 3.

13. Cf., Errion v. Connell, 236 F.2d 447, 454 (9th Cir. 1956) where the "single fraudulent scheme" involved both a federal violation and a state violation. See also oft cited Kopald-Quinn & Co. v. United States, 101 F.2d 628 (5th Cir. 1939).

14. Individuals controlling corporate entities are issuers. See Landay v. United States, 108 F.2d 698, 704 (6th Cir. 1939), and Stadia Oil & Uranium Co. v. Wheelis, 251 F.2d 269 (10th Cir. 1957).

15. See note 10, supra.

16. The use of the mails or interstate facilities may be entirely incidental or used in any manner. United States v. Cashin, 281 F.2d 669, 673 (5th Cir. 1960); Creswell-Keith, Inc. v. Willingham, 264 F.2d 76 (8th Cir. 1959). See generally, III Loss, Securities Regulation at 1521 (1961) and cases cited therein.

be given a liberal construction to accomplish their purpose.[17]

 A major objective of the federal Securities Acts is to prevent fraud in the sale of securities and to minimize or prevent losses to investors. The United States District Courts have jurisdiction to enter injunctive relief and to further grant such ancillary relief inherent in a court of equity.[18] There has been in this record a showing of impossibility of performance by the defendant corporations. It appears clearly that the best interests of public investors is served by the appointment of a receiver and the prompt liquidation of all assets within the jurisdiction of the court, and through proper legal procedure the pro-rata return of monies to the public investors, wherever situated.

---

17. Blackwell v. Bentsen, 203 F.2d 690, 693 (5th Cir. 1953), appeal dism., 347 U.S. 925, 74 S.Ct. 528, 98 L.Ed. 1078 (1954).

18. III Loss, Securities Regulation at 1508–09 (1961) and the many cases cited therein.