**UNITED STATES of America**

v.

John B. SANDERS, Jr., Charles A. Landry, Jr., Thomas W. Moss, Jr., Irwin L. Gitz, Ellis S. Joubert, Jr., Stephen J. Dinneen, and Joseph Ryan Missett.

Crim. A. No. 17697.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Jan. 26, 1967.

Edward L. Shaheen, U. S. Atty., and E. V. Boagni, Asst. U. S. Atty., Shreveport, La., for plaintiff.

Philip J. Shaheen, Jr., Lake Charles, La., for Landry.

R. C. Baldwin, New Orleans, La., for Gitz and Joubert.

William M. Schultz, Houston, Tex., for Moss.

Harold P. Barkas, Miami, Fla., for Dinneen and Missett.

P. R. Covington, and C. A. King, II, Lake Charles, La., for Sanders.

PUTNAM, District Judge.

These seven defendants are charged in a single indictment with fraud in the sale of securities in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), with using the mails to defraud under 18 U.S.C. § 1341, 18 U.S.C.A. § 1341, and with conspiracy to violate these laws. Counts 1 through 12 deal with the securities violations, 13 through 24 with mail fraud, and count 25 with conspiracy.

Motions have been filed to dismiss on grounds of duplicity. It is the position of defendants that the indictment on its face shows two separate and distinct schemes to defraud or fraudulent courses of conduct charged in counts 1 through 24, and two separate and distinct conspiracies in count 25.

Additionally, defendants contend that fraudulent conduct in the offer or sale of securities, as defined in subsections (1), (2) and (3) of 15 U.S.C.A. § 77q (a), is the crux of the offense, or corpus delicti, and the use of instrumentalities

of commerce merely incidental thereto for jurisdictional purposes. Thus, even conceding that only one device, scheme, plan or course of conduct is alleged and, further, that it embodies the characteristics of the fraudulent conduct prescribed by and meets the requirement of each of these three subsections, there is a single continuing offense committed between November 22, 1957 and March 15, 1965, the dates charged in this indictment. Counts 1 to 12 should, therefore, be dismissed, or, alternatively, consolidated into one count for purposes of this prosecution, for multiplicity.

## MULTIPLICITY
### (Counts 1–12)

This motion presents the most serious problem. Defendants place their principal reliance on the holdings in United States v. Cashin, 281 F.2d 669 (2 Cir. 1960), United States v. Hughes, 195 F. Supp. 795 (S.D.N.Y.1961) and United States v. Greenberg, 30 F.R.D. 164 (S.D.N.Y.1962).

In *Cashin*, on a motion to transfer, the Court held that even though all mailings charged in that indictment occurred in the Southern District of New York and had their impact in the Western District of that state, since the fraudulent scheme is the gravamen of the offense under Section 17(a), 15 U.S.C.A. § 77q(a),[1] venue was proper in the Southern District of Alabama where the fraudulent scheme was hatched, where the defendants resided and where all steps taken in the execution of the scheme, other than the mailings charged in the indictment, took place. The Court distinguished the Securities Act from the mail fraud statute, where the mailing is considered to be the gravamen of the crime and venue proper only where mailed, received or in a district through which the mailed matter passes.[2] This holding in respect to venue was pri-

1. § 77q. *"Fraudulent Interstate Transactions*
   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instrument of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

2. This distinction is expressed in the following language:
   "The government strenuously urges in support of its position that the present indictment under the Securities Act is analogous to an indictment under the mail fraud statute, 18 U.S.C. § 1341, and that hence we should be guided by the rules of venue applied in such actions. It has long been settled that in prosecutions for mail fraud trial may be had only in the place of mailing, the place of receipt of the mail, and places through which the mailed mat-

ter passed. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989.

The analogy is not an apt one because it ignores the fundamental fact that the purpose of the mail fraud statute is to protect against the 'use of the United States mails in furtherance of * * * [the] scheme,' Holmes v. United States, 8 Cir., 134 F.2d 125, 129, certiorari denied 1943, 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722, while the evil at which the Securities Act is directed is the fraud in the sale of securities. It is entirely reasonable that under each statute trial should be had at the place where the primary evils at which the law is directed occur. Moreover, we cannot ignore the fact that the venue rule for mail fraud cases was developed many decades ago, when more restricted notions of the limits of federal power prevailed than exist today. Were the issue of the appropriate place of trial in such cases to arise *de novo* in 1960, it is by no means clear that trial would not be permitted at the place where the fraudulent scheme was developed as well as at the places where the mailing has its impact. While there may be no compelling reason to change the already settled doctrine for mail fraud cases, there is surely no reason to now extend the rule to other areas of the law." (281 F.2d at p. 674)

marily a construction of Rule 21(b) Federal Rules of Criminal Procedure and the general venue statute for continuing offenses, 18 U.S.C.A. § 3237(a), with which we are not here concerned.

In *Hughes*, under the indictment there before the Court, it was held that under Section 17(a) (1) the fraudulent course of conduct was the crime, not individual mailings in furtherance thereof, and, there being but a single "device, scheme or artifice" to defraud alleged, the Court ordered consolidation of all counts for trial and dismissed all but the first for multiplicity, applying the policy of lenity announced in United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). In *Greenberg*, another Judge of that district followed Hughes. But, in United States v. Binstock, 37 F.R.D. 13 (S.D. N.Y.1965), a third said:

> "Whether these decisions were right or wrong as to the particular indictments there involved is not presently of importance. It does seem to me that *if there are separate offers or sales of securities to different persons, there are separate offenses under 15 U.S.C.A. § 17q(a) even though there may be a single scheme.*" (37 F.R.D. at p. 16. Emphasis supplied.)

In our opinion, the decisions of United States v. Universal C. I. T. Corp., supra, and the later cases of Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); and Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) do not require the result reached in Hughes and Greenberg.

■ In this circuit it has long been established that fraud in the sale of securities is the core of the offense proscribed by the Securities Act of 1933, and that use of the mails in furtherance of this evil is incidental and a requirement for jurisdictional purposes. Seeman v. United States, 90 F.2d 88 (5 Cir. 1937). Pace v. United States, 94 F.2d 591 (5 Cir. 1938); Freeman v. United States, 96 F.2d 13 (5 Cir. 1938); Kopald-Quinn & Co. et al. v. United States, 101 F.2d 628 (5 Cir. 1939); Getchell v. United States, 282 F.2d 681 (5 Cir. 1960); Greenhill v. U. S., 298 F.2d 405 (5 Cir. 1962) and McDaniel v. United States, 343 F.2d 785 (5 Cir. 1965).

In the *McDaniel* case, supra, in disposing of the argument that defendant had not used the mails until after the sales had been consummated, the court said:

> "The evil at which the Securities Act is directed is fraud in the sale of securities. That being the congressional purpose and intendment to be covered, the impact of fraud in relation to sales should be considered in making practical application of the Act to a given set of facts. *In other words, a scheme to defraud in relation to a sale of securities, and the use of the mails in consummation thereof, is the gist of the crime. The use of the mails need not be central to the scheme to defraud.* United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed. 2d 136 (1962); Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L. Ed. 435 (1954); United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946), reh. den. 329 U.S. 834, 67 S.Ct. 628, 91 L.Ed. 706; United States v. Cashin, 281 F.2d 669 (2 Cir. 1960); United States v. Monjar, 47 F.Supp. 421 (D.C.Del.1942), aff'd 147 F.2d 916 (3 Cir. 1944), cert. den. 325 U.S. 859, 65 S.Ct. 1192, 89 L.Ed. 1979 (1945)." (Emphasis supplied.)

Stated still another way, in footnote 2 of Greenhill v. United States, supra, 298 F.2d at page 406, the Court said: "Title 15 U.S.C.A. § 77q(a) (1) makes it unlawful, and subject to the penalties set out in Title 15 U.S.C.A. § 77x, in the sale of securities by the use of the mails to employ any device, scheme or artifice to defraud."

Professor Louis Loss, Securities Regulation, 1961, p. 1521–1522, following an exhaustive study of the authorities, concludes:

> "In fact, there is some authority that under § 17(a) of the Securities Act

(and presumably the other SEC fraud provisions) the use of the mails (or presumably of interstate facilities) is the 'gist' of the offense—the *corpus delicti*—as it is under the mail fraud statute. Whether it is the use of the mails or the fraud which is the gist of the offense assumes some importance in the drafting of indictments. Thus, it has long been settled under the mail fraud statute that each mailing in furtherance of a scheme to defraud constitutes a separate offense. Hence each count is limited to one 'count mailing' so that the indictment will not be void for duplicity. This practice has been followed as a matter of course under the SEC fraud provisions. At the same time, the Government has always taken the position that the gist of the offense there is the fraud rather than the jurisdictional means. Its purpose was to make sure that incidental mailings not essential to the execution of the scheme would suffice. But, *since that is now quite clear even under the mail fraud statute (as we shall see in a moment), there is no longer much point to the search for the corpus delicti under the SEC fraud provisions.*

In short, except for the fact that use of the designated interstate facilities is an alternative to use of the mails in the SEC fraud provisions, there is nothing in the language of the mail fraud statute or the SEC provisions 'which would justify the requirements that the fraud or device must be more intimately related to the use of the mails or instruments of interstate commerce under one statute than under the other.' Consequently, the several statutes may be discussed interchangeably.

*The Supreme Court early settled the proposition under the mail fraud statute that, if the use of the mails is in furtherance of the scheme to defraud, it need not be essential, or even effective, in the execution of the scheme." (Emphasis supplied.)*

Whether fraud in the sale of securities by use of the mails or other facilities of interstate commerce, *or such use itself*, constitutes the gravamen of the offense, as in mail fraud, would not affect the rule that each fraudulent offer or sale accompanied by mailing is a separate crime.[3] In either case, both elements are essential to conviction, and the use of the mails or other facilities of commerce is sufficient if it is shown to be in furtherance of the scheme, although not central thereto. A wholly collateral mailing or use, not in furtherance of the fraud, will not suffice. Getchell v. United States, 282 F.2d 681, p. 684 (5 Cir. 1960).

It is difficult to see how there is any remaining room for doubt as to the meaning of Section 17(a) of the Act to bring into play the doctrine of the *C.I.T., Bell*, and *Ladner* decisions of the Supreme Court, supra. Palmer v. United States, 229 F.2d 861 (10 Cir. 1956), cert. den. 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861 is squarely in point. The uncertainty of congressional intent found there, does not exist here. See House Reports 73d Congress, 1933–34, Vol. 1, Report No. 85, p. 24. Each offer or each sale in which the seller employs any one of the three fraudulent devices enumerated in the Act is a distinct violation.

In the present case the indictment, although unnecessarily redundant, makes it clear that the defendants named in Counts 1 through 12 are charged with the sale of securities under Section 17 (a) (1) and (2), conjunctively, and that

3. Palmer v. United States, 229 F.2d 281 (10 Cir. 1955), cert. den. 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861, upheld a conviction on four counts charging separate mailings in connection with only one sale of a security. This view is followed by Judge Haltzoff in U. S. v. Brown, 36 F.R.D. 207 (D.C.D.C.1964). This line of authorities relies upon the construction placed upon the mail fraud statute in many decisions, fully developed in footnotes to Professor Loss' work, supra.

in furtherance of the fraud, the mails or some other specified instrumentality of commerce were employed. Each count refers to a sale of the securities described therein to certain named individuals, and there is but one use of an instrumentality of commerce or of the mails alleged.[4]

Assuming that the ruling in United States v. Hughes, supra, applies, defendants are still without comfort, for this indictment charges a separate fraudulent transaction in addition to the required use of mails or of interstate commerce in each count. (See 195 F.Supp. at page 798.) Cf. Kistner v. United States, 332 F.2d 978 (8 Cir. 1964); United States v. Steffes, 226 F.Supp. 51 (D.Mont.1964).

■ The motion to dismiss or consolidate these counts will be denied.

## DUPLICITY

Decision of these motions in favor of defendants would require us to find that the indictment on its face alleges two schemes to defraud purchases of securities offered and sold by defendants. This we cannot do. A fair reading of the first seventeen paragraphs of Count 1, which are made common to all of the twenty-four substantive counts, shows only a single plan or scheme to defraud the alleged victims. Details of the operations conducted by defendants, with Sanders as the central figure, are given in abundance. While Dinneen and Missett joined the group late, at that time they became participants in the original scheme having as its object or purpose to defraud members of the public by selling worthless securities. They added a new commodity to sell, certificates of deposit of Lords Bank, which, it is alleged, were valueless. In view of this construction of the indictment, it is valid on its face, and whether there

are multiple or single schemes in fact becomes a question for the jury. Baker v. United States, 156 F.2d 386, 392 (5 Cir. 1946) cert den. 1946; 329 U.S. 763, 67 S.Ct. 123, 91 L.Ed. 657; United States v. Crosby, 294 F.2d 928, (2 Cir. 1961), Hayes v. United States, 329 F.2d 209 (8 Cir. 1964) cert. den. Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748.

■ Should it develop at the trial that the proof shows more than one scheme to defraud, and that prejudice might result to one or more of the defendants, it can be corrected on proper motion pursuant to Federal Rules of Criminal Procedure, Rule 14, during trial, or by post conviction motions.

■ Counts 1 through 12 charge the use of fraud, as defined in 15 U.S.C.A. § 77q(a) (1) and (3), in the conjunctive. It is well established that where a statute denounces two or more separate and distinct acts, things or transactions as an offense, they may be charged in the same count conjunctively and the indictment is not bad for duplicity. Federal Rules of Criminal Procedure, Rule 7(c), 4 Wharton's Criminal Evidence and Procedure, Anderson Edition, § 1798, p. 630 et seq.; Cyclopedia of Federal Procedure, 3rd Ed., Vol. 11, p. 381 § 42.47; Troutman v. United States, 100 F.2d 628 (10 Cir. 1938); Price v. United States, 150 F.2d 283 (5 Cir. 1945), cert. den. 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479; Smith v. United States, 234 F.2d 385 (5 Cir. 1956); Heflin v. United States, 223 F.2d 371 (5 Cir. 1955); Cunningham v. United States, 356 F.2d 454 (5 Cir. 1966); United States v. Bennett, 36 F.R.D. 103 (E.D. S.C.1964). Thus, there is no improper joinder of offenses in Counts 1 through 12 in the indictment now before the Court.

---

4. Section 2, Securities Act of 1933, 15 U.S.C.A. § 77b, insofar as pertinent, provides:

"* * * unless the context otherwise requires:

   *     *     *     *     *

(3) The term "sale" * * * shall include every contract of sale or disposition of a security * * * for value. The term * * * "offer" shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security * * * for value."

Finally, it is contended that Count 25 charges more than one conspiracy and hence is bad under the rule of Kotteakos, et al. v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and Blumenthal v. United States, 332 U.S. 539, 553, 68 S.Ct. 248, 92 L.Ed. 154 (1947) reh. den. 332 U.S. 856, 6 S.Ct. 385, 92 L.Ed. 425 (1948). This count charges that the defendants conspired to violate the provisions of the Securities Act and the mail fraud statutes discussed hereinabove.

■ Our construction of the indictment as charging only a single fraudulent scheme, here equated with a single conspiracy of two or more persons to violate the laws of the United States in regard to Securities Fraud and Mail Fraud, removes this case from the *Kotteakos, Berger* and *Blumenthal* cases, supra.

■ It is now well settled that the fact that the conspiracy includes violation of more than one statute does not make the count duplicitous. Overstreet v. United States, 321 F.2d 459 (5 Cir. 1963), and authorities therein cited.

## MOTIONS FOR SEVERANCE

■ Defendants Gitz and Joubert jointly, and Landry and Moss separately, have moved for separate trials. We feel that Dinneen and Missett should also be tried separately.

We direct this severance for the reason that it is apparent in this case, from the facts stated in the indictment and the brief filed by the government, that it will be extremely difficult, if not impossible, to separate the proofs as to each count of this fifty-page document, which is entirely too prolix and redundant in the first place, as to each defendant, with resulting prejudice.

Federal Rules of Criminal Procedure, Rule 14 makes severance a matter of discretion.

Moreover, under the doctrine of De-Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5 Cir. 1962), reh. den. 324 F.2d 375 (1963), they have a right to call their co-defendants to the witness stand and, as recognized in Hayes v. United States, 329 F.2d 209 (8 Cir. 1964), if he should claim sanctuary in the Fifth Amendment:

> "Permitting comment upon the failure of a defendant to testify constitutes prejudicial error as to the non-testifying defendant. *On the other hand, where defendant is tried separately his counsel has the right to make fair comment upon the fact that his testimony has not been denied or contradicted. The jury is entitled to consider lack of evidence as well as evidence in reaching its conclusion."*
> (Emphasis Supplied.)

Cf. U. S. v. Parness, 331 F.2d 703 (3 Cir. 1964) cert. den. 377 U.S. 993, 84 S.Ct. 1919, 12 L.Ed.2d 1045; United States v. Echeles, 352 F.2d 892 (7 Cir. 1965) and United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y.1966), and see "Exercise of the Privilege Against Self-Incrimination by Witnesses and Codefendants: The Effect Upon the Accused", Vol. 33 p. 151, University of Chicago Law Review, for a most comprehensive discussion of the question.

The problem is not confined to the claim of privilege made by a co-defendant, or to tactics of government counsel during trial, when claimed by a witness, as seen in Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) and Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

While we do not hold here that a joint trial of several defendants is no longer possible, in view of precautionary measures available to the Court through pretrial conferences and during the trial itself, some of which are suggested in *Namet,* supra, we are convinced that in this instance separate trials are necessary to avoid error, severance as to some defendants after trial begins, and a probable mistrial.

At this time, the order of trial will be defendant Sanders, followed by Din-

neen and Missett jointly, Gitz and Joubert jointly, and Landry and Moss. The Court reserves the right to change this order of trial and to reconsolidate the defendants if, after pretrial conferences are held, it appears to us that convenience and the administration of our docket will be best served and the likelihood of prejudice to any defendant minimized by such action.

## MOTIONS FOR CHANGE OF VENUE

### 1. *Moss*

Defendant Moss has moved for transfer of his trial to Houston, Texas. This motion is denied.

### 2. *Sanders*

No objection has been filed by the Government to the motion for change of venue in behalf of this defendant. The motion on its face alleges grounds that would require our serious consideration and would probably result in granting the request. In view of the 1966 amendment to Rule 18, Federal Rules of Criminal Procedure, place of trial is discretionary with the Court, provided it be within the District. No serious inconvenience to the Government or the witnesses will result in a change to either the Lafayette Division or the Opelousas Division, and this motion is granted. The Court will determine place of trial at the pretrial conference.

## MOTION TO CLARIFY ORDER GRANTING PARTICULARS

The Government has filed a motion for clarification of the Court's order of December 9, 1966, for particulars. This motion is a proper one. On December 2, 1966, the Clerk of Court entered an order conforming to what was said orally in court the day the motions were heard. On December 9 the Court drafted its formal ruling, and, insofar as the minute order entered by the Clerk conflicts with this ruling, the minute order is recalled and vacated.

Upon further study of the indictment as we have set out above, our construction of Counts 1 through 12 is that the charges are laid under 15 U.S.C.A. § 77q (a) (1) and (3). The first seventeen paragraphs of Count 1, therefore, will be regarded as setting out the broad plan or scheme to defraud under 77q(a) (1). This construction of the bill accords with the interpretation placed thereon by the Government both in the motion for clarification and in the supplemental brief filed in connection with defendants' other motions.

■ Defendants have been furnished the underlying documents supporting each count. Considering these documents with the allegations of the indictment, we believe this to be a sufficient compliance, such as will enable these defendants to prepare their defenses. The Government should not be required to disclose its evidence. Under the detailed allegations of the indictment, the defendants are fully informed of the nature of the over-all scheme with which they are charged under § 77q(a) (1).

We, therefore, recall and vacate paragraph (d) 3 of our order of December 9, 1966.

■ In the same order the prosecution was directed to make all records of the several corporations named in the indictment available to the accused, pursuant to their motions for discovery and inspection. A great mass of material has been deposited with and now reposes in custody of the Clerk in Lake Charles. Anticipating pretrial conferences and that the Government will probably place expert accountants on the stand to summarize the contents of these records, it is now ordered that the ruling of December 9, 1966, topic (b), be and it is hereby supplemented so that, within five (5) days of receipt of notice hereof, the Government designate all portions of these records that will form the basis for any such expert testimony—in other words, to disclose what portion of the records will be included or covered in such summary or summaries as the prosecution may use on trial, if any such testimony is contemplated.