**William C. GREENE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 13621.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 22, 1957.

Decided May 16. 1957.

Mr. James H. Heller, Washington, D. C. (appointed by this Court) for appellant.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and BAZELON and DANAHER, Circuit Judges.

PER CURIAM.

 Appellant was convicted, on each of 15 counts of an indictment, for violations of the narcotics laws. He was sentenced, on each count, to imprisonment for 20 months to 5 years and a fine of $500. Three of the sentences were to run consecutively and the other 12 "concurrently with" the consecutive sentences. The court said: "In other words, the aggregate sentence is not less than five years and not more than 15 years, and a $1,500.00 fine."

The record supports at least 5 of the sentences that were to run "concurrently with" the 3 consecutive sentences. It therefore supports the aggregate sentence. We need not decide whether it supports the "consecutive" sentences themselves. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Wanzer v. United States, 93 U.S.App.D.C. 412, 208 F.2d 45.

Affirmed.

BAZELON, Circuit Judge (dissenting).

While I agree with my brethren that the record supports more than enough convictions to sustain the total sentence that was imposed, I think the appellant is entitled to a reversal of the improper convictions and a remand of the case for re-sentencing.

The 15 counts of which appellant was convicted arose from four sales of heroin capsules to one Fialkewicz, a narcotics agent, by one Barbara Floyd, who named appellant as her source of supply. The sales occurred on January 14, 18, 21 and 29. In connection with each of the latter two transactions there were two separate deliveries. Counts 4 through 15 of the indictment related to those two transactions. Each of the separate de-

liveries was treated as an independent transaction and, with respect to each, appellant was indicted in three counts: under 21 U.S.C. § 174, 26 U.S.C. § 4704 (a), and 26 U.S.C. § 4705(a). For the January 14 and January 18 transactions, he was indicted, in counts 2 and 3, only for violation of 21 U.S.C. § 174. In addition, he was indicted in count 1 for conspiracy to violate the narcotic laws.

### Counts 4 through 15

A jury may validly convict a drug-seller of multiple counts which are merely different facets of his crime; i. e., selling without a written order on the prescribed treasury form, 26 U.S.C. § 4705(a), and not in or from the original stamped package, id. § 4704(a), drugs he has possessed and concealed, 21 U.S. C. § 174. Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L. Ed. 306.[1] Moreover, each separate sale may support three separate convictions. Ibid.

The present case presents the additional question whether, when there is one sale but two separate deliveries, three convictions may attach to each delivery. In other words, may the seller be convicted on six counts, when he has made one drug sale?[2] Appellant was convicted on six counts with respect to both the January 21 sale and the January 29 sale. Although most of the sentences imposed are concurrent, he received consecutive sentences on counts 4 and 7, the two violations of 26 U.S.C. § 4705(a) relating to the January 21 sale.

The prosecutor's or the grand jury's election to treat a two-delivery sale as two separate criminal transactions is not controlling. "Whether an aggregate of acts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information [or an indictment] and may have to await the trial on the facts." United States v. Universal Corp., 1952, 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260. The test is whether or not the acts "arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse,' a conception recognized by [the] Court in the Blockburger case, supra, 284 U.S. at [page] 302, [52 S.Ct. at page 181], quoting Wharton's Criminal Law, 11th ed., § 34." Id., 344 U.S. at page 224, 73 S.Ct. at page 231. Applying this test to the facts disclosed by this record, I conclude that the sales of January 21 and January 29, despite the fact that each was followed by two deliveries, were single transactions, each capable of supporting three counts, but not six.

On the morning of January 21, Fialkewicz paid Miss Floyd $100 for 67 heroin capsules which she was to obtain and deliver to him. She gave the money to appellant who gave her only 30 capsules which she delivered that night to Fialkewicz. She told Fialkewicz to meet her later that night to receive the balance of the purchase. At the later meeting and then at a third meeting, she told Fialkewicz she had not been able to obtain the additional capsules. She finally obtained the 37 capsules from appellant on January 22, but, since Fialkewicz was out of town, did not deliver them to him until the 23rd.

On the evening of January 29, Fialkewicz paid Miss Floyd $80 for 57 capsules. She gave him 20 and arranged to deliver the balance at a later meeting. At the second meeting that same night, but about 10 minutes after midnight,

---

1. See my concurring opinion in Gore v. United States, 100 U.S.App.D.C. 318, 244 F.2d 766.

 In Blockburger only two of the statutes were involved. But the principle is the same when all three are involved.

2. Under the increased penalties provided by the Act of July 18, 1956, c. 629, Title I, §§ 103 and 105, 70 Stat. 568, 570, 26 U.S.C. § 7237, 21 U.S.C. § 174, such a six-count conviction, if cumulatively punishable, could bring a first offender as much as 100 years imprisonment and a fine of $120,000; if the culprit is a repeater, the maximum could go as high as 240 years. See my concurring opinion in Gore v. United States, supra note 1.

the additional 37 capsules were delivered.

For its right to fragmentize each of these sales into two criminal transactions, the Government relies upon Blockburger v. United States, supra. The Supreme Court stated the facts of that case as follows:

"The sales charged in the second and third counts, although made to the same person, were distinct and separate sales made at different times. It appears from the evidence that shortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day. But the first sale had been consummated, and the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery." 284 U.S. at page 301, 52 S.Ct. at page 181.

The distinction between Blockburger and the present case is too patent to require exposition. The Court concluded in Blockburger that " * * * the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain." Id., 284 U.S. at page 303, 52 S.Ct. at page 181. The facts of the present case compel an opposite conclusion: one sale, one impulse, one bargain.[3]

Effective prosecution does not require multiplication of convictions. As the Supreme Court said in United States v. Universal Corp., 344 U.S. at page 225, 73 S.Ct. at page 231, "a draftsman of an indictment may charge crime in a variety of forms to avoid fatal variance of the evidence. He may cast the indictment in several counts whether the body of

the facts upon which the indictment is based gives rise to only one criminal offense or to more than one." But, if the facts, once they have been developed, "give[s] rise to only one criminal offense," there may be a judgment of conviction on only one count. The superfluous counts may be dismissed before submission of the case to the jury by compelling the prosecutor to elect the count upon which he relies. Ibid. Or they may be dismissed after verdict, sentence being imposed only for one offense. If convictions are permitted to result on more than one count, all but one must be reversed. Heflin v. United States, 5 Cir., 1955, 223 F.2d 371. If the defendant is sentenced on more than one count, the additional sentences are void. Brooks v. United States, 10 Cir., 1955, 223 F.2d 393.

Application of these principles results in reversal of the convictions of counts 7, 8 and 9 relating to the January 21 sale, and counts 13, 14 and 15 relating to the January 29 sale.

### The Conspiracy Count

Count 1 charged that appellant and Miss Floyd "conspired and agreed together, and with other persons unknown to the Grand Jurors" to violate 26 U.S.C. §§ 4704(a) and 4705(a) and 21 U.S.C. § 174 and it alleged as overt acts the matters alleged in counts 2 through 15 as constituting substantive violations of those statutes. The count charged that the conspiracy began on or about December 11, 1954, but it alleged no overt act earlier than January 14, 1955, the date of the first contact between Miss Floyd and Fialkewicz.

The only evidence introduced to prove that the conspiracy began prior to the Floyd-Fialkewicz transactions was the testimony of two narcotics agents, Kelly and Jackson.[4]

---

3. The Government's argument that the statutes punish not only sale, but also delivery, goes too far. By that argument, a two-delivery sale could result in nine convictions rather than six as here.

4. The Government seeks to rely also upon Miss Floyd's testimony that she had ac-

companied appellant on two trips to New York City. She said appellant made the trips to buy narcotics, but she went along only for the trip, having no part in his narcotics activities. Moreover, she said she could not remember the dates of the

Kelly testified that on December 11, 1954, he had broached to appellant a scheme for appellant to provide a quantity of narcotics which Kelly would sell to raise money for a mutual friend who needed bail. Appellant told Kelly he would deal only through one "Andrea Rogers," a person otherwise unidentified and whose name never recurs in the case. Kelly, for his part, said he would also employ an emissary. Jackson, the agent who served as Kelly's emissary, testified that he called on appellant to take delivery of an ounce of heroin for $600, but that the purchase fell through when appellant insisted that delivery be deferred until two or three days after payment. Kelly said that when appellant came to meet him at a restaurant in response to his telephone call, he was accompanied by Miss Floyd. So far as appears from the record, appellant did not know, when he brought Miss Floyd along, that Kelly was going to talk about a narcotics purchase. Nor does it appear that Miss Floyd took any part in the conversation between the two men. Jackson said that when he was with appellant, Miss Floyd came in and appellant introduced him to her. It does not appear that she participated in their discussion or was even aware of its nature. Jackson said that after her arrival there was some "small talk" and in a few minutes he left. Miss Floyd testified that she had met Jackson at appellant's home, but all she remembered was that appellant had asked her over and that, when she arrived, Jackson was there.

A conspiracy requires at least two actors. There may, of course, be a continuing conspiracy with a changing dramatis personae, so long as there are never less than two conspirators. A gap during which there is only one actor breaks the continuity. When a new conspirator thereafter appears on the scene, there is a new and separate conspiracy. Miss Floyd had nothing to do with appellant's December dealings with Kelly and Jackson.[5] If appellant was guilty of a conspiracy which began in December, who was his co-conspirator? The Government suggests it was the mysterious Andrea Rogers, whom appellant had mentioned to Kelly.[6] If the Government is right, there were two separate conspiracies, not one continuing conspiracy. The Rogers woman had no connection with the January events which were the subject of the indictment. The conspiracy in which she participated was terminated in December with the abandonment of negotiations between Kelly and appellant. And the alleged conspiracy in which Miss Floyd was involved did not begin until some weeks later.

Since the incidents referred to in the Kelly-Jackson testimony related to a different conspiracy from that charged in the indictment, it was error to admit that testimony "to prove the conspiracy."[7] Although there may have been evidence in the record from which the jury could have found a conspiracy between appellant and Miss Floyd, I cannot say that the jury would have done so but for the evidence erroneously ad-

trips; they could have been in January. There is, thus, nothing to show they occurred before the dealings with Fialkewicz.

5. The Government concedes that "there was no testimony to show what her part in the scheme was." Nor was there any testimony to show that she had *any part* in it.

6. I do not assume that Andrea Rogers was meant to be included among the "other persons unknown to the Grand Jurors." Her name was certainly not unknown to the prosecutor.

7. At the conclusion of Kelly's testimony, which occupies only 11 pages of the trial transcript, defense counsel pointed out to the court that the testimony did not relate to anything charged in the indictment. Counsel called his statement an "application," rather than either a motion to strike or an objection. The court chose to treat the application as an objection and denied it as coming too late. I think that, even if it was an objection, the ground upon which it was overruled was overly technical. Moreover, I see no reason why the application was not treated as a motion to strike. As such, it should have been granted.

mitted. See dissenting opinion in Woods v. United States, 1956, 99 U.S.App.D.C. 351, 240 F.2d 37, 43–44, certiorari denied, 77 S.Ct. 815. I would accordingly reverse the conviction of Count 1.

### Counts 2 and 3

These two counts relate to the January 14 and January 18 transactions. With respect to those two transactions, as distinguished from the later ones, the only part appellant is claimed to have played was to supply drugs to Miss Floyd. He did not drive her to her meetings with Fialkewicz. Nor did he participate in any way in her dealings with the agent or discuss those dealings with her. Indeed, it does not appear that he was even aware of them.

Miss Floyd testified that the drugs she sold to Fialkewicz were supplied to her by appellant. There is no other direct evidence tying him to the transactions in Counts 2 and 3. The Kelly-Jackson testimony, if admissible, might have been taken by the jury as tending to corroborate Miss Floyd's testimony that he was her source of supply and it appears that it was submitted to the jury for that very purpose. The jury was instructed that, though it could convict appellant "on the sole, uncorroborated testimony of" Miss Floyd, "[h]ere, however, you are not asked to do so, because the Government has introduced corroborating testimony from a number of Government agents." This instruction invited the jury to rely upon inadmissible evidence. Since it cannot be said that the convictions of Counts 2 and 3 were not the result of that invitation, those convictions should be reversed.

8. Cf. Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Wanzer v. United States, 1953, 93 U.S.App.D.C. 412, 208 F.2d 45; Kinnison v. United States, 1946, 81 U.S.App. D.C. 312, 158 F.2d 403, certiorari denied, 1947, 330 U.S. 834, 67 S.Ct. 966, 91 L. Ed. 1281.

9. The court quoted from Amendola v. United States, 2 Cir., 1927, 17 F.2d 529, 530, where Judge Learned Hand said:

### The Question of Prejudice

The Government argues that we should disregard such error as the record contains because (1) whatever evidence was improperly admitted was only cumulative, there being other evidence on which the jury could have returned the various convictions; and (2) at least three of the fifteen convictions must in any event, be affirmed, so that the aggregate sentence is not excessive.

However persuasive this argument might ordinarily be, this is not an ordinary case. In this case, each allegedly criminal transaction has been multiplied into all of its variants, each variant producing a separate conviction. Furthermore, although twelve of the fifteen convictions carry concurrent sentences, the remaining three, including two of the convictions which I would reverse, carry cumulative sentences.[8] I would follow the principle recently expressed by the Court of Appeals for the Second Circuit in United States v. Pagano, 2 Cir., 1955, 224 F.2d 682, 683, that convictions are not to be affirmed in such a case "unless the whole trial was conducted with the most scrupulous exactness." [9]

In the light of the foregoing, I would reverse the convictions of Counts 1, 2, 3, 7, 8, 9, 13, 14 and 15. I would vacate the sentences imposed upon the remaining six counts and would remand the case to the District Court for resentencing, not only because the nine improper convictions bear two of the three consecutive sentences, but also because I do not assume that the District Court would have imposed the same aggregate sentence for a conviction of six counts as for a conviction of 15 counts. This court

"While we recognize, of course, that we have no power over the sentence, yet, when the question arises as to whether the record clearly shows that there has been an unjust result, we will not ignore an error which, except for the sentence, would not have justified reversal. We cannot assent to the repetition of the charge with purely formal changes, as a device to double the penalty, unless the whole trial was conducted with the most scrupulous exactness."

said in Fulton v. United States, 1916, 45 App.D.C. 27, 42:

"Moreover, while the sentence imposed does not exceed the maximum penalty possible under a conviction upon either count, it is mere conjecture to say that the court was not influenced by the double conviction."

That the nine convictions which I would reverse did in fact influence the aggregate sentence here imposed was indicated by the District Court when, in sentencing appellant, it referred to the "exceedingly aggravated character" of his offense and pointed out, "there are 15 counts in this indictment."