**UNITED STATES of America, Plaintiff,**

v.

**Addison Raymond KETCHUM and Roland E. Thompson, Defendants.**

United States District Court
S. D. New York.
Dec. 14, 1962.

Robert M. Morgenthau, U. S. Atty., S.D. New York, Arthur I. Rosett, Asst. U. S. Atty., of counsel, for plaintiff.

Corcoran, Kostelanetz, Gladstone & Lowell, New York City, for defendant Addison Raymond Ketchum; Jules Ritholz, Jon H. Hammer, New York City, of counsel.

DAWSON, District Judge.

Defendant Addison Raymond Ketchum (hereinafter Ketchum) was indicted by a grand jury which charged him with nine separate crimes. Ketchum seeks by this motion brought under Rule 12(b) of the Federal Rules of Criminal Procedure to have counts 2 through 8 dropped as being duplicative of count 1.

The indictment charges that Ketchum was an employee of the International Cooperation Administration (hereinafter ICA), Department of State, during the period 1954–1958 when the alleged crimes were committed. This agency was in charge of a portion of the foreign aid distributed by the United States. Projects were contracted for and supervised by the recipient nation and the bills of the contractors paid for by the ICA. The particular project involved in the indictment was for the reconstruction of Pier 5 in Manila Bay, Republic of the Philippines.

It was the job of the defendant in his role as an advisory engineer to assist the National Economic Counsel of the Republic of the Philippines (hereinafter NEC) in its preparation of contracts and approval of bids on those contracts. Instead of rendering that service in a disinterested capacity, defendant allegedly conspired with The Union Metal Manufacturing Co. (hereinafter Union Metal) to insure their receiving the contract to supply the metal piles for the pier reconstruction. To guarantee that Union Metal would be the successful bidder, defendant Ketchum advised the NEC to incorporate specifications in the contract to be bid on that matched exactly with the type of piles most easily produced by Union Metal. As a result of this action Union Metal was the successful bidder. The United States made payments to Union Metal on the basis of the completed work on Pier 5.

The grand jury further charged that Roland E. Thompson (hereinafter Thompson) a co-defendant of Ketchum and an officer of the Wm. H. Rennolds Co. (hereinafter Rennolds) induced Union Metal to hire Rennolds as its agent in the Philippines in connection with bidding on the contract. When the United States paid Union Metal for the completed work, Union Metal paid commissions to its agent Rennolds. One-half of their commission payments were deposited by Thompson to the brokerage account of defendant Ketchum. To avoid discovery of the payments, documents were prepared to make it appear that the moneys so deposited were loans from Thompson to Ketchum.

Counts 1 through 8 of the indictment are in every respect identical except that each charges a separate deposit by Thompson to Ketchum's account. Count 9 of the indictment charges a conspiracy to commit offenses named in the first 8 counts. Each receipt of money by Ketchum is said to violate 18 U.S.C. § 281.*

This motion seeks to set aside counts 2 through 8 as duplicative of count 1. It is defendant's contention that if the alleged acts took place they constitute one and not eight separate offenses. Each receipt of money being in furtherance of one single plan to defraud they

* "Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, or the head of a department, or other officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States." 18 U.S.C. § 281.

are all elements of a single crime punishable by a $10,000 fine and two years in prison. If the acts alleged to have been committed by defendant Ketchum involve eight distinct substantive crimes then consecutive sentences would make the maximum fine and commitment eight times as severe. The defendant does not attack the ninth count of the indictment which charges a conspiracy by him and others.

Congress has a choice when it enacts a criminal law as to what the allowable unit of punishment shall be. It may proscribe a particular act or a course of conduct. If the latter is found to be the intention of Congress then many acts thought to be separate offenses become part of one course of conduct and therefore constitute one crime. A course of conduct has been defined by the United States Supreme Court as one that arises from a singleness of thought, purpose or action—that which results from a single impulse. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

The indictment in its present form charges only one course of conduct if that is the applicable unit of prosecution. Defendant Ketchum is charged with defrauding the United States by taking money from one of the competitive bidders on a contract. The first 8 counts all relate to this one scheme. Each separate count asserts that a co-defendant deposited money in Ketchum's brokerage account. Defendant was a passive recipient of the funds which were credited to him.

■ The Government may prevail on the present indictment only by showing that the unit of prosecution is the receipt of the funds and that Congress intended to punish each such receipt and not simply the entire scheme to defraud. The Government must show that this is clearly the intent of Congress for ambiguity is resolved in favor of a defendant in a criminal prosecution. Mr. Justice Frankfurter, speaking for the Court in

Bell v. United States, 349 U.S. 81, at pages 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) said:

"It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. * * * [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes."

The logical starting point for a determination of this sort is to note carefully the statutory language. "Whoever * * * receives or agrees to receive, * * * any compensation * * *." The word "any" suggests that it is the receipt of the money that constitutes the offense. But the word "any" has appeared in other statutes that have been construed to proscribe only a course of conduct. In the C. I. T. case which arose under the Fair Labor Standards Act, 52 Stat. 1060, 1068–1069, as amended, 63 Stat. 910, 919, 29 U.S.C. §§ 215, 216(a), the employer was required to "pay to each of his employees * * * not less than 75 cents an hour;" to not "employ

any of his employees * * * for a workweek longer than forty hours;" and to "make, keep, and preserve such records * * * as he [the Administrator] shall prescribe by regulation or order. * *" (Fair Labor Standards Act, §§ 6, 7 and 11). The Supreme Court there held that one offense was committed when an employer failed to meet any of the above requirements with respect to a group of employees. It was the decision to embark on the prohibited course of conduct that Congress had penalized. In Bell v. United States, supra, the Supreme Court found that the simultaneous transportation of two women across interstate lines by a defendant was one violation of the Mann Act. The statute provided that, "Whoever knowingly transports in interstate or foreign commerce * * * any woman or girl for the purpose of prostitution * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both." 36 Stat. 825, 18 U.S.C. § 2421.

United States v. Personal Finance Company, 174 F.Supp. 871 (S.D.N.Y. 1959) involved loans by the defendant in violation of emergency consumer credit controls in effect during the Korean conflict. The loans were to different parties on different occasions. Nevertheless, this court, on the authority of the C. I. T. case, found all violations of one type to be one offense and refused to find that each loan was a separate crime. The Government argued unsuccessfully that every loan must logically be the result of a new and distinct decision and as such the unit of prosecution adopted by Congress.

 In the instant case defendant was indicted for the receipt of moneys while a federal employee. Each receipt is essentially a passive act that requires no new decision or impulse. There is even less reason here than there was in the Personal Finance case for attributing to Congress the intent to make each transfer of funds a separate crime.

This court again considered duplicative counts of an indictment in United States v. Woody Fashions, Inc., 190 F.Supp.

709 (S.D.N.Y.1961). The defendant was there charged with the misbranding of woolen products. The Government contended that each mislabeled garment was the basis of a separate crime. This Court determined that it was the managerial decision to misbrand the coats that was the crime and not the ministerial act of sewing the label marked "100% Cashmere."

The Government relies in great measure upon Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906). The Court there construed a statute materially identical to the one that forms the subject matter of this motion. The defendant objected that he was indicted for agreeing to receive the compensation and again for its receipt. Pointing to the words of the statute, "[n]o Senator * * * shall receive *or* agree to receive any compensation * * *." (emphasis added), the Court held that a crime was committed when the defendant agreed to be paid for using his influence improperly. Even if no money had then been transferred, the crime would have been complete. Similarly, receipt without prior agreement was also illegal. The Court did not have occasion to pass on the question of multiple payments as separate crimes. Whether the defendant in this case could properly be indicted for three crimes, an agreement to accept compensation, the acceptance thereof and a conspiracy to commit these crimes, is not before the Court at this time. The decision in the Burton case places a definitive limit on the number of crimes that may emanate from one course of conduct. The position here urged by the Government could result in an almost infinite number of crimes if the defendant were foolish enough to accept his compensation in small installments.

The Government seeks to analogize the instant case to those involving bribery and extortion. These cases have held that a crime is committed each time money is paid. The theory of the cases is that each payment buys the desired protection for a period of time. When

the time expires a new agreement is entered into. In United States v. Alaimo, 297 F.2d 604, 606 (3d Cir., 1961), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962) the court said:

" * * * We think it quite reasonable that Congress should have provided for a separate punishment each time an employee representative places a price upon two weeks of labor peace, just as it did for each transaction in which prohibition agents were paid for two weeks' protection. Cf. Patton v. United States [42 F.2d 68 (8th Cir. 1930)] * *." See United States v. Piasecki, 300 F.2d 152 (3d Cir., 1962).

These cases are factually distinguishable from the present one. Defendant is not charged with a new and wrongful course of conduct each time he received money. The payments to him were all for a single act, either committed or to be committed. It was a bribe paid in installments and not a series of separate bribes.

■ The final group of cases cited by the Government are inapposite to the question raised. They involve the propriety of casting the same conduct in different counts of an indictment so that there will not be a fatal variance between the charge and the proof. The question in the instant motion is not which of two crimes has been committed. It is concerned with the number of times a single offense has been repeated. The considerations are not the same. The former question is primarily one of proof. "It has long been the approved practice to charge, by several counts, the same offense as committed in different ways or by different means, to such extent as will be necessary to provide for every possible contingency in the evidence." 27 Am.Jur. § 130, p. 688 (1940). The latter question is one of law that requires a court to ascertain legislative intent and is not dependent upon proof at the trial.

Defendant's motion to drop counts 2 through 8 of the indictment as duplicative of the first count should be granted. The Court agrees with the comment of Judge Friendly, concurring, in United States v. Tolub, 309 F.2d 286 (2d Cir., 1962), when he said:

" * * * The multiplication of counts in indictments has become a matter of serious concern, because of the threat thereby posed to the effective working of the jury system and the possibility of sentences out of proportion to the true gravity of the offense. * * * "

Motion granted.