**UNITED STATES of America**

**v.**

**Lowell M. BIRRELL, Defendant.**

**No. 61 Cr. 692.**

United States District Court
S. D. New York.

April 3, 1967.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for the United States, Arthur L. Liman, Sp. Asst. U. S. Atty., and Stephen L. Hammerman, Asst. U. S. Atty., of counsel.

William J. Brennan, III, New York City, for defendant, Lowell M. Birrell

## OPINION

HERLANDS, District Judge.

This motion by the defendant * to dismiss Counts Two through Sixteen of the indictment or, alternatively, to compel the Government to elect one count out of Counts One through Sixteen for purposes of trial poses an interesting question of criminal pleading usually considered under the rubrics of "duplicity," "multiplicitousness" or "fragmentation of crimes."

The answers to the questions—whether the indictment is duplicitous and whether the allegedly duplicitous counts should be dismissed or whether the Government should be compelled now to select for trial one of the challenged counts—must be formulated with some circumspection because the course of relevant decisions in this circuit is not a clear, straight line.

### The Challenged Counts

Although the indictment contains a total of thirty-two counts, the disposition of this motion requires an analysis of only Counts One through Sixteen, which are the counts attacked as duplicitous.

A. The "Introduction" of the Indictment

The first nine pages of the indictment follow a subject-heading entitled "Introduction." This "Introduction" is divided into four numbered paragraphs. Paragraph "1" of the "Introduction" covers a six-year period described as from on or about August 1, 1955 up to and including the filing date of the indictment, which (as a matter of record) is July 20, 1961. This paragraph names the thirteen individual defendants and the one corporate defendant, J. A. Winston & Co., Inc.

This paragraph then identifies the securities that are the subject matter of the crimes charged as the common shares of capital stock ("common stock") of American Leduc Petroleums Limited ("American Leduc"). This paragraph—adopting and paraphrasing the language of Title 15, United States Code, Section 77q(a)—alleges (in substance) that the defendants unlawfully did the acts proscribed by said Section 77q(a); and then lists the names of fifty-six persons, described as the "persons to be defrauded" by the defendants. After listing the

---

* The indictment has been severed as to the other defendants.

fifty-six names, the indictment adds: "and other persons too numerous to name herein."

Paragraph "2" of the "Introduction" is divided into nine subparagraphs lettered "(a)" to "(i)," which follow a prefatory statement that the defendants' "device, scheme, artifice to defraud, transactions, practices, and course of business"—as referred to in paragraph "1" of the "Introduction"—"involved the issuance to and acquisition by" Birrell and five other defendants (the corporate defendant, Winston, the two Bernsteins and Gilbert) of "large blocks" of American Leduc common stock for the purpose of selling said stock to the persons to be defrauded. The nine subparagraphs "(a)" to "(i)" describe acts that are stated to be "a part" of the previously mentioned "device, scheme, * * * and course of business." The acts described in these nine subparagraphs cover a period of time from 1954 to February 1, 1958.

Paragraph "3" of the "Introduction" lists twenty-three "untrue statements of material facts" by means of which the defendants obtained money and property in the sale of American Leduc common stock —these untrue statements being "a further part" of the previously described "device, scheme, artifice to defraud, transactions, etc." The twenty-three untrue statements are set forth in separately lettered subparagraphs "(a)" to "(w)".

Paragraph "4" of the "Introduction" lists three material facts that the defendants omitted to state (that should have been stated in order to make the statements that were made, under the circumstances in which they were made, not misleading), the omissions being "a further part" of the previously described "device, scheme, artifice to defraud, etc."

B. "Counts One Through Sixteen"

At page 9 of the indictment, following the paragraphs that comprise the "Introduction," there is a subject-heading entitled "Counts One Through Sixteen." The newly expressed allegations (that appear at pages 9–13 of the indictment) under the said subject-heading incorpo-

rate by express reference certain specific elements set forth in named paragraphs of the "Introduction" and also "each and every allegation contained in * * * paragraphs 1 through 4 of the portion of the indictment entitled 'Introduction'."

Structurally, the material pleaded as Counts One through Sixteen is presented in two numbered paragraphs ("1" and "2") and in a table (at pages 11–13 of the indictment) setting forth detailed allegations under five horizontal columnar headings entitled "Count", "Date", "Name & Address of Purchaser", "Matter", and "Defendants".

As to the named defendant, there are seven defendants named in each such count. Six of those seven are the same for each of the sixteen counts, namely, Birrell, J. A. Winston & Co. Inc., Joel A. Winston, Albert and Irving Bernstein, and Morrison Gilbert. The seventh named defendant sometimes varies. The seventh named defendant is Count One is Harry Levine; in Count Two, Benof Berman; in County Three, Bernard Rotter; in Count Four, Benof Berman; in Count Five, Leo Glassman; in Count Six, Matthew Naphtali; in Count Seven, Phil F. Krumholz; in Count Eight, Matthew Naphtali; in Count Nine, Bernard Rotter; in Count Ten, Leo Glassman; in Count Eleven, Max Levine; in Count Twelve, Phil F. Krumholz; in Count Thirteen, Benof Berman; in Count Fourteen, Max Levine; in Count Fifteen, Harry Levine; and in Count Sixteen, Benjamin N. Saporta.

For each of the said sixteen counts, there are different named purchasers, except with respect to the second and fourth counts where the same purchaser (Dr. Justin H. May) is named.

For each of the said sixteen counts, there are different named dates, except with respect to the twelfth and thirteenth counts, where September 19, 1956 is specified and the fourteenth, fifteenth and sixteenth counts, where November 16, 1956 is specified.

For each of the said counts, the listed "matter" is different, inasmuch as each count appears to deal with different pur-

chases of American Leduc Petroleums Limited shares of stock and different stock certificates.

Paragraph "1", referring to the said table, alleges that, on or about the date stated in each respective count of the said sixteen counts, the defendants named in each such count sold the particular shares of American Leduc common stock referred to in each such count to the respective purchaser named in that count. Paragraph "1" further alleges that "in each such sale" the defendants (as named in the particular count) unlawfully, willfully and knowingly in the Southern District of New York did the acts then described in subparagraphs "(a)" to "(d)."

Subparagraph "(a)" states that the defendants named in each such count employed the device, scheme and artifice—described in paragraphs 2, 3 and 4 of the "Introduction"—to defraud the purchaser named in each such respective count.

Subparagraph "(b)" states that the defendants obtained money and property from the purchaser named in each such count by means of untrue statements of material facts and omissions to state material facts—as set forth in paragraphs 3 and 4 of the "Introduction."

Subparagraph "(c)" states that the defendants engaged in the transactions, practices and course of business—as described in paragraphs 2, 3 and 4 of the "Introduction"—which operated as a fraud and deceit upon the purchaser named in each such count.

Subparagraph "(d)" states that the defendants caused to be carried through the mails the matter described in each such count, enclosed in an envelope bearing an address set forth in each such count, to the purchaser named in each such count.

Paragraph "2" incorporates into each of Counts One to Sixteen by express reference all of the allegations contained in paragraphs "1" through "4" of the "Introduction."

Counts One through Sixteen cite Title 15 U.S.C. §§ 77q(a) and 77x, and Title 18 U.S.C. § 2. The latter provision is the aiding and abetting statute. The title 15 provisions are part of the Securities Act of 1933. Section 77x is the penalties provision, attaching criminal liability to wilful violations of the statute. Section 77q(a) is the substantive provision that defines the acts declared to be illegal. We turn now to an analysis of Section 77q(a).

*Title 15 U.S.C.A. § 77q(a) Analyzed*

This statute provides:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

The prefatory language of Section 77q(a) is contained in that portion of the provision which precedes the subdivisions numbered "(1)", "(2)", and "(3)". This prefatory language speaks of an offer or sale of securities, and of the use of the mails or interstate commerce in connection with such offer or sale. The different physical acts that—under the conditions specified in the preface—are declared to be "unlawful" are those defined in the separate subdivisions numbered "(1)", "(2)" and "(3)". Each of the numbered subdivisions "(1)", "(2)" and "(3)" is introduced by an infinitive. This is pointed up by the following elliptical quotation:

"It shall be unlawful * * * (1) *to employ* any device, scheme, or artifice to defraud, or (2) *to obtain* money

\* \* \* by means of any untrue statement of a material fact \* \* \*, or (3) *to engage* in any transaction, \* \* \* which operates \* \* \* as a fraud or deceit \* \* \*." (Emphasis supplied.)

Each infinitive designates an unlawful act.

■ Section 77q(a) does not make a "device, scheme, or artifice to defraud" the common denominator of all three numbered subdivisions. These three subdivisions reflect the fact that the draftsmen of the Securities Act of 1933 sought to encompass a wider range of unlawful acts than those conventionally denominated as a fraudulent scheme. See Herlands, "Criminal Law Aspects of the Securities Act of 1933," 67 U.S. Law Review 562, 570–572 (1933). Broad language was purposely employed in § 77q(a)—as (reflected in its three subdivisions—for the additional reason that violations of that section can serve as the springboard for an S.E.C. investigation or an S.E.C. motion and action for an injunction. § 77t.

Because the three subdivisions of § 77q(a) express the statutory purpose of making the acts specified in those subdivisions separate and distinct, there is strong logic to the view that each of the different acts defined in those subdivisions can serve as an "allowable unit of prosecution." Cf. United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952). The distinctions between the three subdivisions may seem esoteric because they entail hairline differences of proof. But Congress, who deliberately made the distinctions, evidently did not think them so. And experience with criminal trials demonstrates that the unexpected frequently happens.

*The Pertinent Judicial Decisions*

In United States v. Hughes, 195 F. Supp. 795 (S.D.N.Y.1961) and United States v. Greenberg, 30 F.R.D. 164 (S.D.N.Y.1962), involving indictments strikingly similar to that in the present case, the indictments contained, *inter alia,* multiple counts charging violations of title 15 U.S.C.A. § 77q(a) (1), (2) and (3). In those cases, upon defense motions to dismiss the challenged multiple counts as duplicitous, the court consolidated all of the counts that it found to be duplicitous with one separately pleaded count and dismissed the duplicitous counts.

In reaching that conclusion, the court relied heavily upon the following statement in United States v. Cashin, 281 F.2d 669, 673 (2d Cir. 1960):

"The gist of the crimes charged in the indictment, as in most Securities Act cases, is the fraudulent scheme employed in the sale of securities. [Citations.] The purpose of the requirement that there be a use of the mails or other facilities of commerce is solely to create a basis for federal jurisdiction. [Citations.]"

The question before the Court of Appeals in *Cashin* was the narrow one of venue. The district court in *Hughes* and *Greenberg*, acting on the shaky assumption that the quoted *Cashin* excerpt had a larger meaning than its factual frame of reference, transposed its rationale into a new context of pleading. The defendant in the case at bar also predicates his argument largely upon *Hughes* and *Greenberg*. Minutes of Argument (January 10, 1967) pp. 43, 47 and 48.

*Cashin* is quite apart from the issue posed in *Hughes* and *Greenberg* and in the present case. Here, as in *Hughes* and *Greenberg*, the determinative question concerns the substantive definitions of the crimes charged and the allowable units of prosecution, and the related question of the proper time when, in the circumstances of this case, the defense claim that the indictment is duplicitous should be raised and decided.

More to the point are the subsequent decisions in United States v. Ketchum (2d Cir.) 320 F.2d 3, cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963) and United States v. Binstock, 37 F.R.D. 13 (S.D.N.Y.1965). In *Ketchum,* the district court dismissed Counts 2–8 of an indictment as being merely dupli-

cations of Count 1 thereof and as not stating separate offenses. 212 F.Supp. 53. The Court of Appeals reversed and, in an opinion per Friendly, J., said (320 F.2d at 8):

> "The draftsman 'may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one. To be sure, the defendant may call upon the prosecutor to elect or, by asking for a bill of particulars, to render the various counts more specific. In any event, by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because *at the conclusion of the Government's case* the defendant may insist that all the counts are merely variants of a single offense.' United States v. Universal C. I. T. Credit Corp., supra, 344 U.S. at 225, 73 S.Ct. at 231, 97 L.Ed. 260. See also Dealy v. United States, 152 U.S. 539, 542, 14 S.Ct. 680, 38 L.Ed. 545 (1894). * * * *Whether election among Count 1–8 should be required, either before or after the close of the evidence, is not before us.* Under no view, however, was dismissal an appropriate remedy." (Emphasis added.)

*Ketchum* has been regarded, at least by one district court, as indicating that the issue of duplicitousness should await the development of the Government's evidence "at the trial." United States v. Binstock, supra, 37 F.R.D. at 16. In *Binstock*—where Counts 23–44 of the indictment were very much like those challenged in the present case and the defendant moved to dismiss those counts or, alternatively, to consolidate them into one count for trial—District Judge Inzer B. Wyatt, after considering *Hughes, Greenberg, Cashin* and *Ketchum,* denied the motion and held that the issue of duplicitousness could better be decided in the light of the evidence to be adduced by the Government at the trial. How this works out in practice is exemplified by United States v. McGuire, 249

F.Supp. 43 (S.D.N.Y.1965), a decision by District Judge Wyatt after trial.

In words singularly apposite to the present case, Mr. Justice Frankfurter has declared, United States v. Universal C. I. T. Credit Corp., supra, 344 U.S. at 225, 73 S.Ct. at 231:

> "Whether an aggregate of acts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial on the facts."

The importance of an evidentiary basis for resolving the question of duplicity is indicated by such cases as Ladner v. United States, 358 U.S. 169, 178 n. 6, 179, 181, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); Nason v. Immigration and Naturalization Service, 370 F.2d 865 (2d Cir. 1967); United States v. King, 373 F.2d 813 (2d Cir. 1967); United States v. Gumbs, 246 F.2d 441, 443 (2d Cir. 1957) (concurring opinion of Hincks, J.); Greene v. United States, 100 U.S.App. D.C. 396, 246 F.2d 677, 679 (1957) (dissenting opinion of Bazelon, J.); United States v. Long, 169 F.Supp. 730 (D.D.C. 1959).

■ This is not to suggest that there is or should be an invariable rule postponing to the time of trial a motion to dismiss or consolidate certain counts or to compel the Government to elect among counts on the ground of duplicitousness. Where the duplicity appears upon the face of the indictment so clearly that it is manifest that the Government cannot, as a matter of law, prove separate and distinct offenses, the question can and should be decided without awaiting the trial. Where, however, the language of the indictment makes it reasonably possible that the prosecution's evidence may establish, in accordance with the indictment, more than one crime, it would be premature to decide a pre-trial defense motion based upon duplicity without affording the Government an opportunity to adduce its proofs. Sophrosyne pre-

vents the judicial process from becoming the victim of its own technique.

*Conclusion*

Under the facts as pleaded in the present indictment, there could be sixteen separate crimes. Under the facts as may be proved upon the trial, an entirely different picture may emerge. For example, if the prosecution should prove [under § 77q(a) (1)] only one scheme to defraud in the operation of which there were sixteen victims, only one offense would have been committed. On the other hand, if the prosecution should prove [under § 77q(a) (2)] that, on sixteen different occasions with respect to sixteen different persons the defendants obtained money by means of untrue statements of a material fact separately made to each such victim, sixteen offenses would have been committed. And, if the prosecution should prove [under § 77q(a) (3)] that the defendants engaged in a single course of business that operated as a fraud on sixteen purchasers, only one offense would have been committed.

The distinction between a scheme to defraud [subdivision "(1)"], the obtaining of money by material misrepresentations [subdivision "(2)"] and a course of business that operates as a fraud [subdivision "(3)"] may turn out to be shadowy when viewed in light of the trial evidence; the three theoretically different situations may, in reality, coalesce.

If the evidence should portray such an amalgam of evidence—making it difficult to discern separate patterns of the defendant's conduct qualifying as distinct units of prosecution—the Court would necessarily resolve the doubt as to the existence of multiple offenses, as distinguished from a single offense, in favor of the accused. Criminal statutes must be construed narrowly; crimes may not be created by inference. United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967). But the time to decide that question of duplicity is at the trial upon the basis of evidence, not now solely on the basis of the indictment.

The motion is denied in all respects without prejudice to renewal at the conclusion of the Government's direct case at the trial.

So ordered.