UNITED STATES of America, Appellee,

v.

**Neil T. NAFTALIN, Appellant.**

**No. 77–1290.**

United States Court of Appeals,
Eighth Circuit.

Oct. 4, 1979.

Joe A. Walters and John B. Blatz, O'Connor & Hannan, Minneapolis, Minn., for appellant.

A. W. Danielson, U. S. Atty., and Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Naftalin was convicted in United States District Court for the District of Minnesota on eight counts of employing a scheme to defraud[1] in the offer or sale of stock in violation of § 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and was sentenced to five years imprisonment on each of the eight counts, to be served concurrently. On appeal, we vacated the judgment of conviction on the grounds that § 17(a)(1) was not violated by certain fraudulent practices directed toward brokers who were not investors. *United States v. Naftalin*, 579 F.2d 444 (8th Cir. 1978), *rev'd,* —— U.S. ——, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979). The Supreme Court, however, disagreed and reversed and remanded for fur-

ther proceedings in conformity with its opinion. *United States v. Naftalin,* —— U.S. ——, 99 S.Ct. 2077, 60 L.Ed.2d 624(1979). On remand, appellant asks us to consider certain issues which we did not discuss in our previous opinion. After giving careful consideration to each of these issues, we uphold the decision of the district court and reinstate the conviction of the defendant.

■ Appellant first asks us to address the issue of whether the district court erred in sentencing Naftalin on eight separate counts. He argues that because the government only offered proof of a single scheme to defraud, he should have been found guilty of a single scheme and sentenced accordingly. Relatedly, it is urged that prosecutions under § 17(a)(1) generally involve proof of a single scheme and thus appellant should not have been sentenced on eight counts.

These arguments, however, are unpersuasive. As indicated, each count of the indictment dealt with a completely separate sale. Even though there may be a common thread of fraud among the sales, courts have consistently held that each sale of a security may constitute a separate offense. *Sanders v. United States,* 415 F.2d 621 (5th Cir.), *cert. denied,* 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1969); *United States v. Anzelmo,* 319 F.Supp. 1106 (E.D.La.1970).

While it may be conceded that prosecutions under § 17(a)(1) sometimes involve proof of a single scheme, appellant's reliance on *United States v. Birrell,* 266 F.Supp. 539, 545 (S.D.N.Y.1967), does not help him here. *Birrell* offers only one view of the allowable unit of prosecution. *See* cases cited in *United States v. Amick,* 439 F.2d 351, 359 (7th Cir.), *cert. denied,* 404 U.S. 823, 92 S.Ct. 48, 30 L.Ed.2d 51 (1971). We hold that the district court correctly tried and sentenced appellant on separate counts.

---

1. This scheme to defraud, which consisted of appellant's ordering five brokers in eight separate transactions to sell stock that he did not own, is fully described in *Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 469

F.2d 1166 (8th Cir. 1972). *See also United States v. Naftalin,* 534 F.2d 770 (8th Cir.), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 89 (1976).

We next consider the appellant's argument that the allegations of jurisdiction in support of Counts I–V of the indictment were insufficient to sustain jurisdiction under the Securities Act. 15 U.S.C. § 77q(a) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Courts have broadly construed this provision and consistently held that mailings which are even incidental to the fraud itself are still sufficient to support jurisdiction. *United States v. Porter*, 441 F.2d 1204 (8th Cir.), *cert. denied*, 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); *United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); *Little v. United States*, 331 F.2d 287 (8th Cir.), *cert. denied*, 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 42 (1964). This court has specifically noted that a mailing, though incidental, is sufficient to support jurisdiction if the mailing is used in "furtherance of the scheme", *Little v. United States, supra* at 292; *Creswell-Keith, Inc. v. Willingham*, 264 F.2d 76, 80 (8th Cir. 1959), or for the purpose of executing the scheme, as, for example, the lulling of victims and the continuance of the relationship between the schemer and his victim, *Bliss v. United States*, 354 F.2d 456, 457 (8th Cir.), *cert. denied*, 384 U.S. 963, 86 S.Ct. 1592, 16 L.Ed.2d 675 (1966). *See also United States v. Sampson*, 371 U.S. 75, 81, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Porter, supra* at 1211.

Appellant argues that the mailings, in the present case, were not even incidental to the scheme to defraud. He notes that the sole basis of jurisdiction alleged in Counts I–V of the indictment was that he caused the broker-dealers to mail confirmations of the offers of stock to his company. And he claims that these confirmation slips were mere formalities having no effect on the contract between Naftalin and the broker and giving Naftalin no additional rights, money or property. Thus, appellant concludes that the broker's mailing of the confirmation slips cannot be considered incidental to the scheme to defraud.

It is the customary practice in the investment field for broker-dealers, after a sell order has been placed, to mail confirmation slips showing the trade, the settlement date, and the terms of the stock transaction. Frequently, the confirmation slip may be the first important contract document to pass between the broker and his principal. Naftalin, a knowledgeable and experienced investor, would undoubtedly have anticipated that his sell orders would result in the brokers' following this usual procedure and would have considered these confirmation slips as integral expressions of his contract relationships with the brokers. *United States v. Porter, supra* at 1211.

Moreover, courts rather uniformly have held that mailings of confirmation slips are sufficiently related to a scheme to defraud in the sale of stock to provide jurisdiction for criminal charges under the Securities Act. *United States v. Brown*, 555 F.2d 336 (2d Cir. 1977); *United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975); *United States v. Marando*, 504 F.2d 126 (2d Cir.), *cert. denied sub nom. Berardelli v. United States*, 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974); *McDaniel v. United States*, 343 F.2d 785 (5th Cir. 1965). Although appellant attempts to distinguish some of these cases by noting that he, unlike defendants in those cases, did not mail confirmation slips to his victims, the Fifth Circuit has already answered this contention. In upholding jurisdiction in the case of *McDaniel v. United*

*States, supra*, the court noted that: "It matters not whether McDaniel himself did the mailing; the use of the mails by his brokers must have been fully contemplated by him, and attributed to him." *Id.* at 788. We conclude that the government proved sufficient use of the mails to sustain jurisdiction under 15 U.S.C. § 77q(a).

Finally, appellant argues that he was a victim of double jeopardy because the eight charges of this prosecution were the subject of a prior disciplinary action by the Securities and Exchange Commission. Appellant notes that in *Helvering v. Mitchell*, 303 U.S. 391, 399–401, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Supreme Court pointed out that a defendant may not be subject to both a civil and criminal prosecution if the civil proceedings are punitive rather than remedial and compensatory. It is postulated that the Securities and Exchange Commission proceedings were essentially punitive because they resulted in appellant's being permanently barred from association with any broker. From this premise, it is urged that under *Mitchell* a subsequent criminal prosecution violates the double jeopardy clause.

We do not agree. Various courts explicitly have held that Securities and Exchange Commission sanctions imposed on broker-dealers are not punitive but rather devices to protect the investing public. *Blais D'Antoni & Associates, Inc. v. S. E. C.*, 289 F.2d 276, 277 (5th Cir. 1961). *See also Berko v. S. E. C.*, 316 F.2d 137, 141 (2d Cir. 1963); *Pierce v. S. E. C.*, 239 F.2d 160, 163 (9th Cir. 1956); *Wright v. S. E. C.*, 112 F.2d 89, 94 (2d Cir. 1940). Although appellant attempts to distinguish *Blais* by noting that the Securities and Exchange Commission sanction, in the present case, was against him personally rather than against a brokerage firm, his argument is unconvincing. The Securities and Exchange Commission could only protect the investing public from Mr. Naftalin's deceptive practices by barring Mr. Naftalin as well as his company from broker-dealer activities. Otherwise, Mr. Naftalin could start a new firm and continue his deceptive dealing. In the circumstances, we conclude that SEC's removal of Naftalin from investment activities was not punitive but rather a remedial act to protect the public, and that his subsequent criminal prosecution did not violate the double jeopardy clause.

Of course, we are not unmindful that the proceedings before the Securities and Exchange Commission as well as the long and tortured course of litigation in this and other courts may have had serious adverse impact on appellant. In the circumstances, it may be doubted that further incarceration of Naftalin will serve any useful purpose. Such considerations, however, do not affect the validity of appellant's conviction. We leave them, as we must, to the discretion of the district court which may be exercised on appropriate motion.

Pursuant to the decision and mandate of the Supreme Court of the United States in subject case, our original opinion and judgment in the case are vacated, and the case is remanded to the United States District Court for the District of Minnesota with directions that Naftalin's conviction on all eight counts of the indictment against him be reinstated and for other proceedings, if necessary, consistent with the decision of the Supreme Court and with this opinion.